## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**MORENA ROCO, ERICZON MACARAYAN,**
**FRANCISCO ABSIN, LEONOR LACSINA,**
**and ROGELIO RINGOR, EACH**　　　　　　　　　　　　　**PLAINTIFFS**
**INDIVIDUALLY AND ON BEHALF OF**
**OTHERS SIMILARLY SITUATED**

**vs.**　　　　　　　　　**Case No. 4:10-CV-__30__**

**STAR ONE STAFFING INTERNATIONAL, INC.**
**STAR ONE STAFFING, INC., MARY JANE HAGUE,**
**JOHN C. CARRUTHERS, and RUTH CARRUTHERS**　　　　**DEFENDANTS**

### COMPLAINT

COME now Plaintiffs Morena Roco, Ericzon Macarayan, Francisco Absin, Leonor Lacsina, and Rogelio Ringor, each individually and on behalf of others similarly situated, by and through their attorneys of Holleman & Associate, P. A., and Sanford Law Firm, PLLC, and for their *Complaint* against Defendants Star One Staffing International, Inc., Star One Staffing, Inc., Mary Jane Hague, John C. Carruthers and Ruth Carruthers (hereinafter "Defendants"), do state and allege as follows:

### JURISDICTIONAL STATEMENT

1.　　　Plaintiff Morena Roco is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this *Complaint*, she was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the *Fair Labor Standards Act* (hereinafter "FLSA").

2.　　　Plaintiff Ericzon Macarayan is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

3.      Plaintiff Francisco Absin is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

4.      Plaintiff  Leonor Lacsina is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, she was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

5.      Plaintiff Rogelio Ringor is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

6.      Defendant Star One Staffing International, Inc. (hereinafter "Star One International"), is a Florida corporation, with its principal place of business located in Miami, Florida. Star One International has the necessary minimum contacts to confer specific personal jurisdiction for the following reasons:

6.1      Star One International defrauded Plaintiffs into signing contracts which were to be and which have been largely if not exclusively within the State of Arkansas.

6.2      The causes of action set forth herein resulted, in whole or in part, from the fraud of Star One International in the State of Arkansas.

6.3      Star One International contracted with various country clubs in Arkansas to provide services and employees to the country clubs in the State of Arkansas.

6.4      Star One International has engaged in the conscious and purposeful exercise of the privilege of conducting business in the State of Arkansas.

6.5      Star One International has registered with the Arkansas Secretary of State.

6.6      The registered agent through which Star One International may be served is

2

The National Registered Agents, Inc. of Arkansas, located at 455 West Maurice Street, Hot Springs, AR 71901.

7. Defendant Star One Staffing, Inc. (hereinafter "Star One"), is a Florida corporation, with its principal place of business located in Miami, Florida. Star One does not maintain registration with the Arkansas Secretary of State. However, Star One has the necessary minimum contacts to confer specific personal jurisdiction for all of the other reasons set forth in sub-paragraphs 6.1 through 6.4, above. The President and registered agent for service of process for Star One is Mary Jane Hague, who may be served at 2414 Coral Way, 2nd Floor, Miami, Florida 33145 pursuant to Arkansas' long arm statute.[1]

8. Defendant Mary Jane Hague (hereinafter "Hague") is an individual residing in Miami, Florida. Hague may be served with process pursuant to Arkansas' long arm statute[2] at 2414 Coral Way, 2nd Floor, Miami, Florida 33145. As Hague is the President, Treasurer and a Director of Star One, as well as the President and a Director of Star One International, the latter of which maintains registration with the Arkansas Secretary of State. She has the necessary minimum contacts to confer specific personal jurisdiction.

9. Defendant John C. Carruthers is an individual residing in Miami, Florida. John C. Carruthers may be served with process pursuant to Arkansas' long arm statute[3] at 2414 Coral Way, 2nd Floor, Miami, Florida 33145. He has the necessary minimum contacts to confer specific personal jurisdiction as John C. Carruthers is an officer of Star One as well as the Secretary, Treasurer, a Director and an Owner of Star One International, which maintains registration with the

---

[1] Ark. Code Ann. § 16-4-101.

[2] *Id.*

[3] *Id.*

Arkansas Secretary of State.

10.    Defendant Ruth Carruthers is an individual residing in Miami, Florida.  Ruth Carruthers may be served with process pursuant to Arkansas' long arm statute, Ark. Code Ann. § 16-4-101, at 1009 Nautica Drive, Weston, Florida 33327.  She has the necessary minimum contacts to confer specific personal jurisdiction as Ruth Carruthers is the Vice President, Secretary, and a Director and an Owner of Star One.

11.    Plaintiffs bring this lawsuit on behalf of themselves individually and on behalf of all other employees of Defendants[4], whether past, present or future, who are classified as hourly employees and non-exempt from the requirements of the FLSA , but who were not compensated in accordance with applicable laws for three years prior to filing of this law suit.

12.    Plaintiffs seek an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and for compensation and other relief under the FLSA, as amended, 29 U.S.C. §§ 215, 216(b) and 217.

13.    At all times material herein, Plaintiffs have been entitled to the rights, protection and benefits provided under the FLSA.

14.    Plaintiffs also seek to represent the Class of all Filipino H-2B guest workers who were recruited by Star One[5] five years prior to the filing of this cause of action law suit and who traveled/or were transported to the United States.

15.    Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b), 217; 28

---

[4]

The term "Plaintiffs" refers to the Plaintiffs and other similarly situated current and/or former employees of Star One Staffing International, Inc., and Star One Staffing, Inc.

[5]

The term "Star One" refers to both Star One Staffing International, Inc. and Star One Staffing, Inc., unless the circumstances indicate that it is meant to refer to only Star One Staffing International, Inc. or Star One Staffing, Inc.

U.S.C. § 1331 and 28 U.S.C. § 1337.  Venue lies within this district, pursuant to 28 U.S.C. § 1391.

## **FACTUAL ALLEGATIONS**

16.    Star One recruited and recruits, and employed and employs, Filipino individuals, including, but not limited to, all of the named Plaintiffs, to work in Arkansas, as well as several other states, pursuant to H-2B visas.  Star One promised Plaintiffs they would be treated fairly and compensated in accordance with federal law.  Star One promised Plaintiffs they would get at least 40 hours of work each week at specific job sites with a specific rate of pay.

17.    Plaintiffs are guest workers who were brought into the United States through the federal government's H-2B program to work in different country clubs and other food and beverage service industry establishments.

18.    With the average income in the Philippines varying between $1,000.00 to $2,000.00 per year, some of the guest workers and their families went into debt to send Plaintiffs to work in the United States.  For example, Plaintiff Morena Roco paid Star One over $9,000.00 in placement and legal fees in order for her to work in the United States.

19.    Upon their arrival to the United States, Plaintiffs were informed that the specific jobs where they were supposed to work were no longer available.  Instead, Plaintiffs were offered different jobs at a different rate of pay in Arkansas and other states.

20.    Upon information and belief, in some instances Defendants failed to pay the return transportation costs of workers who did not accept different jobs, as they are required to do pursuant to 8 CFR § 214.2 (h)(6)(vi)(E).  A number of Star One employees walked out and disappeared. Consequently, the Plaintiffs and those similarly situated had no choice but to accept new jobs at the different job sites with different rates of pay.

21.    Pursuant to the requirements of 8 CFR § 214.2(h)(2)(i)(D), Defendants were required

to file a new I-129 *Petition for Change of Employer* with the U.S. Citizenship and Immigration Service for each work location. Plaintiffs were forced to accept the aforementioned jobs at the new job sites. As a result of the Defendant's failure to file the required petitions for change of employer, Plaintiffs were forced to work without valid legal authorization, displacing qualified American workers and violating prevailing wage and hour and immigration laws.

22.     Plaintiffs' job duties included serving food and drinks, taking orders, and setting, bussing and clearing tables at country clubs and banquet/catering halls. In Arkansas, these duties were performed at various country clubs in Arkansas.

23.     While employed by Defendants, Plaintiffs were provided housing[6] and transportation to their job site(s)[7], a charge for both of which were taken out of their wages. Deductions were taken in the years 2006 and 2007. In the subsequent years of 2008 and 2009, Star One provided the housing and transportation for free, but even in so doing failed to considered or treat these amounts as wages earned by Plaintiffs.

24.     Additionally during their employment with Defendants, Plaintiffs were required to wear uniforms[8] and use cell phones[9] at work, the costs of which were also deducted from the Plaintiffs' wages.

25.     Plaintiffs did not receive prompt payment for their work pursuant to the requirements of the FLSA. While some Plaintiffs received cash advances before they were paid their wages, others worked for weeks and/or months before receiving compensation for their services.

---

[6] Morena Roco's Remittance Checks are attached hereto as *Exhibit A*.

[7] *Id.*

[8] *Id.*

[9] *Id.*

26.    Furthermore, pursuant to Defendants' policies and procedures, Plaintiffs were required to attend training sessions.  Plaintiffs were "employees" within the meaning of the FLSA for the purposes of said training sessions because their attendance was and is required by Defendants for the immediate benefit of Defendants, and is directly related and specific to the employees' employment with Defendants.

27.    For example, Plaintiff Morena Roco was a team leader for H-2B waiters assigned in Arkansas.  She was required to provide training to other H-2B waiters approximately once per week for two hours or more and was not compensated for this time pursuant to the requirements of the FLSA.

28.    When Plaintiffs finally got paid, they received little in net wages because of the large amount of money Defendants deducted from their gross wages for housing, food, uniforms, cell phones and transportation.  For example:

    28.1    Plaintiff Morena Roco worked 22.75 hours at a rate of $7.42 per hour from July 27, 2009 up to and until August 2, 2009. Her net pay for almost 23 hours of work was $3.63.[10]

    28.2    Plaintiff Morena Roco worked 43 hours at a rate of $7.42 per hour from July 23, 2009 up to and until July 30, 2009.  Her net pay for 43 hours of work was $45.94.[11]

29.    Defendants deducted the following amounts from Plaintiffs' wages (hereinafter referred to as "illegal deductions"):

    a.    $100.00 per week for housing;

    b.    $60.00 per week for transportation;

    c.    $40.00 per week for food;

---

[10]*Id.*

[11]*Id.*

7

    d.   $70.00 for uniforms ($40.00 for a vest, $20.00 for shirts, and $10.00 for an apron); and

    e.   $50.00 for cell phone (when they were required).

30.   As a result of illegal deductions, Plaintiffs were not paid all of their wages in a timely manner, nor were they paid at the wage rate Defendants agreed to pay them.

31   The weekly total for the wage deductions resulted in a reduction of the wages paid to Plaintiffs fell below the minimum wage rate set forth in and required by the FLSA, 20 U.S.C. § 203(m).

32   Credit in amount equal to the value of the illegal deductions was not included in the calculation of overtime wages, pursuant to the requirements of the FLSA.  29 U.S.C. § 207 (e).  As a result Plaintiffs were not fully compensated for all of the hours of overtime they worked.

33.   Plaintiffs were required to pay "placement fees" to come to the United States to engage in the assigned jobs given to them by the Defendants under the H-2B program.  8 U.S.C. 1101 (a)(15)(H)(ii)(b).  At no time did Defendants reimburse Plaintiffs in full for these "placement fees," which fees included the cost of obtaining visa application and issuance fees, transportation costs and border crossing fees, all of which were incurred by Plaintiffs in order to come work specifically for Defendants herein, making these costs and fees an incident of Plaintiffs' employment with Defendants and were primarily for the benefit or convenience of Defendants.

34.   Plaintiffs had an express, constructive and/or implied agreement that Defendants would pay them wages at the rate required by the applicable federal and/or state law when said wages were due for each hour or part of an hour Plaintiffs performed compensable work under the FLSA for Defendants.

35.   Defendants breached the aforementioned agreements by withholding pay, making

illegal deductions, not including said illegal deductions in the calculation of wages and paying a different rate of pay than that which Plaintiffs had agreed to before traveling to the United States, all of which were in violation of the FLSA. Defendants also breached agreements by failing to file the necessary and proper petitions for change of employer in compliance with 8 C.F.R. §214.2(h)(2)(i)(D).

36.     Plaintiffs anticipate that Defendants brought somewhere between 100 to 200 similarly situated guest workers pursuant to the H-2B visa program to work in the State of Arkansas and other states during the time period relevant to the allegations herein above.

## NEW YORK INVESTIGATION

37.     In April of 2008, the Attorney General of the State of New York started an investigation against Defendants for repeated and persistent illegality by: 1) making prohibited deductions from the wages of guest workers from the Philippines who were employed by Defendants to work at country clubs and other food and beverage services industry establishments in New York; 2) failing to pay employees wages for the full amount of hours worked; 3) failing to pay employees overtime at the required rate, and 4) failing to pay employees earned wages within the time limits.[12] The Attorney General of the State of New York sought relief from April 2002 until the date of filing petition.[13]

38.     On November 5, 2008, the parties to the Petition stipulated and agreed to settle and resolve the investigation by entering into *Assurance of Discontinuance.*[14]  Under the terms of the

---

[12] *Petition* is attached hereto as *Exhibit B*.

[13] *Id.*

[14]*Assurance of Discontinuance* is attached hereto as *Exhibit C*.

9

*Assurance*, Defendants agreed to pay the sum of $113,454.00 in full settlement of investigation.[15]

39.     Star One agreed to comply with all provisions of the New York Labor Law in the operation of its business.[16]  Star One also agreed to monitor their compliance with the New York Labor Law and regulations by providing the Attorney General of the State of New York starting January 10, 2009, and January 10, 2010 with (1) a complete set of time records and payroll records for all persons employed by Star One in the State of New York, and (2) documents related to H-2B visas.[17]

40.     Star One agreed to: (1) not  make deductions from its employees' wages or charge its employees by separate transaction for housing, food and/or transportation costs, except where authorized by New York Law; (2) pay any non-exempt employee who works more than forty hours in a week overtime pay at one and one half times his or her regular rate of pay; (3) pay its employees weekly; and (4) pay its employees their full, lawful earned wages for all hours worked, including any hours spent in "training."[18]

41.     Upon information and belief, Defendants have been engaged in and will continue to engage in ongoing violations of the FLSA, including illegal deductions, paying to employees less than minimum wage, not including deductions in calculation of wages, and paying at a different rate than was agreed prior to employees' arrival in the United States.   Plaintiff Morena Roco's Remittance Checks[19] demonstrate that Star One completely, decisively and intentionally breached

---

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]  *Id.*

[19]  *See Exhibit A.*

the terms of the *Assurance of Discontinuance*. This is direct evidence of the willfullness pursuant to 29 U.S.C. § 255 of the FLSA thereby subjecting Defendants to a <u>three</u> year statute of limitations and liquidated damages.

## CLASS AND COLLECTIVE ACTIONS ALLEGATIONS

42.     Claims for damages based on breach of contract, fraud, and promissory estoppel in the alternative, are brought by the Class Representative Plaintiffs on behalf of themselves and all of those similarly situated, namely, former and current employees of Defendants for the past five years prior to the filing of this cause of action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

43.     All claims for damages under the FLSA are brought by the Class Representative Plaintiffs as a Collective Action pursuant to 29 U.S.C. § 216(b).

44.     At all relevant times, Defendants employed Plaintiffs for the purposes of the FLSA, 29 U.S.C. § 203.

## FLSA COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46.     All claims set forth in the FLSA Collective Action Allegations are brought against Defendants by the Class Representative Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to the collective action provisions of 29 U.S.C. § 216(b) of the FLSA.

47.     The Class Representative Plaintiffs seek to represent an FLSA Class consisting of all Filipino H-2B guestworkers employed by Defendants at any time from January 18, 2007, up to and through the present, and until the time of the trial of this matter.

48.     The proposed FLSA Class Members are similarly situated in that they have been

11

subject to uniform practices by Defendants which violated the FLSA, including:

      a.      Defendants' systematic unlawful payroll deductions for housing, transportation, uniforms, cell phones, and food;

      b.      Defendants' workforce-wide failure to reimburse Class Members for travel, immigration processing, visa, recruitment, and other immigration-related expenses;

      c.      Defendants' workforce-wide failure to pay Class Members all of their wages when due at the wage rate that Defendants had initially agreed to pay them;

      d.      The weekly total for the wage deductions resulted in reduction of wages paid to Class Members below the minimum wage rate required by the FLSA, 29 U.S.C. § 203(m); and

      e.      The cost of illegal deductions were not included in calculation of overtime wages, pursuant to the requirements of the FLSA. 29 U.S.C. § 207 (e). As a result, Class Members were not fully compensated for all of the hours of overtime they worked.

49.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     The named Plaintiffs assert this claim for damages and declaratory relief pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.

51.     Defendants violated 29 U.S.C. § 206 by failing to pay Plaintiffs and others similarly situated the applicable minimum wage for every compensable hour of labor they performed.

52.     Defendants violated 29 U.S.C. § 207 by failing to pay Plaintiffs and others similarly situated the applicable overtime wage for every compensable hour of labor they performed.

53.     The violations of the FLSA set out above resulted from Defendants' illegal deductions from the wages of Plaintiffs and others similarly situated.

54.     Defendants' failure to pay Plaintiffs and others similarly situated their federally

mandated minimum and overtime wages were willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

55.     As a consequence of Defendants' violations of the FLSA, Plaintiffs and others similarly situated are entitled to recover their unpaid minimum and/or contractual and overtime wages, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

56.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed and/or continue to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

57.     Plaintiffs in this action have signed Consent to Sue forms pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.  Other individuals will sign consent forms and join as Plaintiffs in this claim in the future.

58.     Defendants violated and continue to violate the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).  These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. § 201, *et seq*.

## Federal Rule of Civil Procedure 23 Class Allegations

59.     The Class claims for injunctive relief are brought pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).  For the purposes of injunctive relief, the Class consists of all Filipino H-2B guestworkers who were recruited by Defendants from five years prior to the filing of this cause of action and who traveled/or were transported to the United States.

60.    The Class claims for actual, punitive and treble damages are brought pursuant to Fed. R. Civ. P. 23(a) and 23 (b)(3).  For the purposes of actual, punitive and treble damages, Class consists of all Filipino H-2B guestworkers who were recruited by Defendants from five years prior to the filing of this cause of action and who traveled/or were transported to the United States.

### *Rule 23(a)*

61.    The precise number of individuals in the Class specifically described above is known only to Defendants, but the Class is believed to consist of 100 to 200 individuals.  Because of the number of Class Members, and because said Class Members are foreign nationals and migrant workers, joinder of all Class Members is impracticable.

62.    Questions of law common to the Class include, but are not limited to:

a.   Whether Defendants' conduct as set out above constitutes fraud and/or negligent misrepresentation for which they are legally liable;

b.   How the terms of Plaintiffs' contracts with Defendants should be interpreted and whether Defendants breached contracts with Plaintiffs;

c.   The nature and amount of damages available to Plaintiffs, including the applicability of treble, compensatory and/or punitive damages; and

d.   Whether and what kinds of injunctive relief are appropriate.

63.    Questions of fact common to the Class include, but are not limited to:

a.   Whether Defendants made promises and/or representations to Class Members that were fraudulent;

b.   Whether such promises were made willfully or negligently;

c.   Whether Class Members reasonably relied on Defendants' fraudulent promises;

d.   Whether Defendants subjected Class Members to differential and/or adverse terms and conditions of employment on the basis

14

of their race and/or alien status;

e.   Whether Defendants conspired with other parties for the purposes of depriving Class Members of their rights to be free of forced labor and involuntary servitude;

f.   Whether Defendants in fact failed to comply with the terms of their contracts with Class Members and, if so, which terms were breached; and

g.   The source and amount of Class Members' damages.

64.    The claims of the Class Representative Plaintiffs asserted in this *Complaint* are typical of the claims of the Class Members.

65.    The Class Representative Plaintiffs will fairly and adequately protect the interests of the Class Members.

66.    Plaintiffs' counsel are experienced in handling Class Action litigation on behalf of workers like Plaintiffs and the Class Members and are prepared to advance costs necessary to vigorously litigate this action pursuant to Fed. R. Civ. P. 23(b)(2).

67.    Defendants have acted and/or  refused to act on grounds generally applicable to the Class with respect to the claims set forth in this *Complaint*, thereby making final injunctive relief applicable to the Class appropriate under Fed. R. Civ. P. 23(b)(2), by, *inter alia*:

a.   Engaging in and refusing to desist from engaging in a common illegal scheme, plan and/or pattern of fraudulent recruitment and immigration processing activities which attempted to force and forces Plaintiffs and other Class Members to provide labor or services to Defendants and which injured Plaintiffs and other Class Members in their business and/or property;

b.   Upon information and belief, Defendants' continuing involvement in similar recruitment and labor practices.

68.    Upon information and belief, Defendants continue to conduct and engage in unlawful recruitment and labor practices, threatening current and future violations of Plaintiffs' and other Class Members' rights.

15

*Rule 23(b)(3)*

69.     Common questions of law and fact relevant to this *Complaint*, as identified above, predominate over any pertinent questions involving only individual members.

70.     A Class Action is superior to other available methods of adjudicating the claims set forth in this *Complaint* because, *inter alia*:

a.     Common issues of law and fact, as identified in part above, substantially diminish the interest of Class Members in individually controlling the prosecution of separate actions;

b.     The Class Members are foreign nationals and migrant workers who are heavily in debt and lack the means and/or resources to secure individual legal assistance and who are particularly likely to be unaware of their rights to prosecute these claims;

c.     No member of the Class has already commenced litigation to determine the questions presented; and

d.     A Class Action can be managed with efficiency and without undue difficulty because Defendants have systematically and regularly committed the violations complained of herein and have used standardized recruitment, record-keeping, and employment practices.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C.§ 1962(c) and 18 U.S.C.§ 1962(d)

71.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs' and other Class Members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against all Defendants.

73.     Plaintiffs and other Class Members are "persons" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

74.     Each of the several defendants is a "RICO person" within the meaning of 18 U.S.C. §1963(1).

75.     All Defendants named herein, Andrew Hague and the United States Consular officers in the Phillippines constitute an association-in-fact, and therefore an enterprise (the "RICO Enterprise"), within the meaning of 18 U.S.C. § 1964(4).

76.     The RICO Enterprise is an ongoing business relationship between all of the named Defendants, Andrew Hague and the United States Consular officers in the Phillippines, with the common purpose of recruiting, transporting, providing, processing, and obtaining foreign workers to work in different country clubs and other food and beverage service industry establishments in different states, including Arkansas.

77.     The RICO Enterprise is engaged in interstate commerce, in that its activities and transactions relating to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

78.     The RICO Enterprise is an on-going business relationship with the common purpose of selling work opportunities to Filipino workers to convince such workers to pay high fees and to travel to the United States to work for companies including Star One and Star One International.

79.     The members of RICO Enterprise  function as a continuing unit with a structure for decision-making.

80.     Defendants conducted or participated in, and/or conspired to conduct or participate in the affairs of the RICO Enterprise through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), related by its common goal to recruit, obtain, transport, process, and provide workers through the use of fraudulent promises and exorbitant fees.

81.     Specifically, Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity

17

under 18 U.S.C. § 1961(1):

    a.  Immigration document fraud in violation of 18 U.S.C. § 1546 (relating to fraud and the misuse of visas, permits and other documents); *see also* 8 C.F.R. §214.2(h)(6)(B)(vi);

    b.  Interstate and foreign travel to further its unlawful scheme in violation of 18 U.S.C. § 1952;

    c.  Mail fraud to further its unlawful scheme in violation of 18 U.S.C. § 1341; and

    d.  Wire fraud to further its unlawful scheme in violation of 18 U.S.C. § 1343.

82.    The RICO Enterprise engages in recruiting for work in the United States by making fraudulent promises and charging exorbitant fees for its recruitment and immigration services.

### *Immigration Document Fraud: 18 U.S.C. § 1546(a)*

83.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise submitted false and fraudulent documents in support of H-2B visa applications to U.S. Citizenship and Immigration Services and the U.S. Department of Labor ("USDOL").[20] Employers seeking to hire employees on H-2B visas must first submit an application for temporary labor certification, known as an Application for Alien Employment Certification (referred to as "ETA 750"), to the applicable state workforce agency and the USDOL for approval.[21] In such applications, Defendants certified under penalty of perjury that "The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law."[22]

84.    These willful, knowing and intentional acts constitute immigration document fraud

---

[20]*See* 20 C.F.R. Part 655, governing the labor certification process with which employers must comply in order to obtain an H-2B visa;  8 C.F.R. § 214.(h)(1)(D); and 20 C.F.R. §§ 655.0 to 655.4.

[21]*Id.*

[22]  *Id.*

in violation of 18 U.S.C. § 1546(a).

### Unlawful Acts In Support of Racketeering Enterprises Through
### Interstate and Foreign Travel: 18 U.S.C. § 1952.

85.    As set forth in the preceding paragraphs, Defendants in the RICO Enterprise regularly engaged in and/or conspired to engage in interstate and foreign travel with the intent of carrying on its unlawful activities.

87.    Defendants in the RICO Enterprise frequently engaged in interstate and/or foreign travel to effectuate the fraudulent schemes discussed hereinabove.

88.    These willful, knowing and intentional acts violated 18 U.S.C. § 1952.

### Pattern of Related Racketeering Acts

89.    Defendants have engaged in the racketeering activity described in this Claim repeatedly with respect to the 100 to 200 Filipino H-2B workers employed by Defendants and working in the State of Arkansas and other states.

90.    The racketeering activity committed by Defendants continues presently as the RICO remains engaged in activities to fraudulently recruit workers in the Phillippines and exploit them in the United States.

91.    Defendants rely on the racketeering acts described in this *Complaint* to conduct their regular business activities. Through these racketeering activities, Defendants have successfully sought to profit from the fraudulent recruitment of Plaintiffs and other Class Members, and to continue to recruit, obtain, provide and maintain a consistent and uncomplaining Filipino H-2B guest worker labor force at Defendants' operations.

92.    Defendants' acts are a direct and proximate cause of injuries to Plaintiffs and other Class Members, including, but not limited to, the payment of high fees, assumption of significant interest bearing debt, loss of real and personal property, lost work opportunities, lost or unpaid wages

and additional legal fees.

93.    As set forth in the preceding paragraphs, the racketeering acts have similar participants: all of the Defendants.  Defendants directed their racketeering activities at similar victims: Filipino workers who contacted Defendants in search of stable employment in the United States.

94.    Defendants' acts have similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiffs and other Class Members, and use of similar employment practices and policies with respect to Plaintiffs and other Class Members.

### Mail Fraud: 18 U.S.C. § 1341

95.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

96.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise used the United States Postal Service on numerous occasions to further this fraudulent scheme.

97.    These willful, knowing, and intentional acts constitute mail fraud in violation of 18 U.S.C. § 1341.

### Wire Fraud: U.S.C. § 1343

98.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

99.    As is set forth fully in the preceding paragraphs, Defendants in the RICO Enterprise used wire communications via telephone, fax, and/or email on numerous occasions to further this

scheme.

100.    These willful, knowing, and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

*Injury*

101.    As a direct and proximate result of Defendants' willful, knowing and intentional acts discussed in this section, Plaintiffs have suffered injuries to their property and/or business, including but not limited to: exorbitant fees paid by Plaintiffs for visas and other immigration and recruitment-related services; interest on debts assumed by Plaintiffs to pay such fees; losses of personal and real property incurred in reliance on Defendants' fraudulent acts; lost and unpaid wages; lost employment opportunities, and other pecuniary and/or losses to real or personal property.

102.    Plaintiffs are entitled to an award of damages in an amount to be determined at Trial, including, but not limited to, treble damages and attorneys' fees and all costs associated with this action.

**FRAUD AND NEGLIGENT MISREPRESENTATION**

103.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs.

104.    As is set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives knowingly and/or negligently made materially false and untrue statements and representations to Plaintiffs and other Class Members regarding the nature and terms and conditions of applications and opportunities for immigration status and employment in the United States.

105.    As is set forth in the preceding paragraphs, Defendants knowingly or negligently failed to disclose material facts to Plaintiffs and other Class Members regarding the nature, terms and

conditions of applications and opportunities for immigration status and employment in the United States.

106.    Defendants intended the false statements made by Defendants and/or its agents, employees and/or representatives would induce Plaintiffs and other Class Members to pay the large fees requested by Defendants.

107.    Defendants intended the false statements made by Defendants and/or its agents, employees and/or representatives would persuade Plaintiffs and other Class Members to leave their homes and jobs in the Phillippines and travel to the United States to work for Defendants.

108.    Plaintiffs and other Class Members reasonably relied on the representations of Defendants and/or its agents, employees and/or representatives and had no reason to believe that these representations were false.

109.    Plaintiffs and other Class Members were entitled to rely on Defendants' representations.

110.    As a direct and proximate result of Defendants' knowing, willing, intentional and/or negligent actions, Plaintiffs and other Class Members have been injured.

111.    In reasonable reliance on Defendants' false and/or negligent representations regarding employment opportunities, Plaintiffs and other Class Members paid large sums of money to Defendants.

112.    In reasonable reliance on Defendants' false and/or negligent representations regarding employment opportunities, Plaintiffs and other Class Members incurred substantial interest-bearing debts in order to pay recruitment, immigration-related, and travel fees charged by Defendants and its agents, employees and/or representatives.

113.    In reasonable reliance on Defendants' false and/or negligent representations regarding

employment opportunities, Plaintiffs and other Class Members sold personal and real property and surrendered employment opportunities in the Phillippines.

114.    Plaintiffs and other Class Members are entitled to recover compensatory and punitive damages in an amount to be proven at Trial.

## BREACH OF CONTRACT

115.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116.    As is set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives, offered to obtain H-2B guest worker immigration status for Plaintiffs and other Class Members in the United States under certain terms and conditions, in exchange for Plaintiffs' and other Class Members' payment of fees to Defendants and its employees, agents and/or representatives.

117.    Plaintiffs and other Class Members accepted Defendants' offers and paid the agreed-upon fees.

118.    Defendants failed to comply with its obligations under the contractually-binding agreements entered into with Plaintiffs and other Class Members.

119.    In reasonable reliance on these agreements, Plaintiffs and other Class Members paid large sums of money and undertook substantial debts, surrendered other employment opportunities and incurred other financial losses.

120.    As a direct result of Defendants' breach, Plaintiffs and other Class Members have suffered damages.

121.    Plaintiffs and other Class Members are entitled to recover compensatory damages in an amount to be proven at Trial.

23

122.    In the alternative, based upon the facts stated herein above, and in accordance with contractual law in the State of Arkansas, the principles of unjust enrichment and promissory estoppel mandate judgment in favor of Plaintiffs.  Defendants herein clearly made a promise or promises to Plaintiffs and Class Members related to employment opportunities in the United States.  Plaintiffs and other similarly situated reasonably relied on Defendants' promises and acted in reasonable reliance thereon to their detriment.  Plaintiffs' reliance and performance enured to the benefit of Defendants, and Defendants were enriched thereby.  The enrichments was unjust.  Enforcement of the promises is the only way injustice can be avoided.

## PRAYER FOR RELIEF

123.    Plaintiffs request the following relief:

a.   Certification of Plaintiffs' Class Allegations Claims for Relief in this action as a Class claims pursuant to Rules 23(b)(2) and (b)(3) of the *Federal Rules of Civil Procedure*;

b.  Designating the Class Representative Plaintiffs as Class representatives pursuant to Rule 23 of the *Federal Rule of Civil Procedure*, and designating counsel for the Plaintiffs as counsel for the Class;

c.  Preliminarily certifying the claims set forth in the FLSA Collective Action Allegations as a Collective Action pursuant to 29 U.S.C. § 216(b);

d.  Declaratory judgment, declaring that Defendants have willfully and wrongfully violated their statutory obligations and deprived the Plaintiffs and others similarly situated of their rights, protections and entitlements under law as alleged in the Plaintiffs' *Complaint*;

e.  Injunctive relief;

f.  Compensatory damages;

g.  Punitive damages;

h.  Treble damages as authorized by RICO, 18 U.S.C. § 1964(c)

     i.   Liquidated damages as authorized by the FLSA, 29 U.S.C. § 216;

     j.   An award of prevailing party costs, including attorneys' fees; and

     k.   Such other relief as the Court deems just and appropriate.

124.    Plaintiffs further request the Court to enter a permanent injunction, restraining and preventing Defendants from withholding the compensation that is due each of Plaintiffs and from further violating their rights under the law.

125.    Additionally, Plaintiffs ask that the Court order a complete and accurate accounting of all the compensation to which Plaintiffs are entitled as well as provide a complete listing of the names and addresses of all those employees who are similarly situated as described above, all at the expense of Defendants.

126.    Plaintiffs ask this Court to award them monetary damages in the form of back-pay compensation, liquidated damages equal to their unpaid compensation, plus interest.  This will be for the named Plaintiffs and all others similarly situated.

127.    Plaintiffs further ask the Court to award them their attorneys' fees, and their costs and expenses and disbursements in pursuing this cause of action for the named Plaintiffs and all those similarly situated.

## **DEMAND FOR JURY TRIAL**

128.    Plaintiffs demand a Trial by Jury upon all issues herein.

WHEREFORE, premises considered, all Plaintiffs, each individually and on behalf of others similarly situated, respectfully asks that the named Defendants  Star One Staffing International, Inc., Star One Staffing, Inc., Mary Jane Hague, John C. Carruthers and Ruth Carruthers be summoned to appear and answered herein; for Class Certification pursuant to Rule 23 of the *Federal Rules of Civil*

*Procedure* and Collective Action Certification pursuant to 29 U.S.C. §216(b) of the Federal Labor Standards Act; for judgment in an amount to be proven at a Trial before a Jury; for all attorney's fees and all costs incurred herein; and for all other good and proper relief to which they may be entitled, whether or not specifically requested herein.

Respectfully submitted,

**PLAINTIFFS MORENO ROCO, ERICZON MACARAYAN, FRANCISCO ABSIN, LEONOR LACSINA and ROGELIO RINGOR, EACH INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 400
Little Rock, AR 72211
Telephone:  (501) 221-0088
Facsimile: (866) 591-4661
Email: josh@sanfordlawfirm.com

**Josh Sanford**
**Ark. Bar No. 2001037**

and

HOLLEMAN & ASSOCIATE, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile: (501) 975-5043

By: _____
**John T. Holleman**
**Ark. Bar No. 91056**
Jholleman@johnholleman.net

26

DD Remittance Check No: 503158 Dated 08/06/2009

## REMITTANCE DETAIL

| Date | Ref | ItemCode | Description | Qty | Unit Price | Remitted |
|------|-----|----------|-------------|-----|------------|----------|
| 07/30/09 | 128621 | TEMPHOURS | PLEASANT - F & B (9:45am - 2:15pm) | 4.5 | 7.42 | 33.39 |
| 07/31/09 | 128621 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4 | 7.42 | 29.68 |
| 07/31/09 | 128621 | TEMPHOURS | PLEASANT - F & B (5:00pm - 9:45pm) | 4.75 | 7.42 | 35.25 |
| 07/29/09 | 128621 | TEMPHOURS | PLEASANT - F & B (9:45am - 2:00pm) | 4.25 | 7.42 | 31.54 |
| 07/29/09 | 128621 | TEMPHOURS | PLEASANT - F & B (3:45pm - 9:00pm) | 5.25 | 7.42 | 38.96 |
| 07/27/09 | Team Leader | TEAML | Team Leader Services July 27 - August 2, 2009 | 1 | 45.00 | 45.00 |
| 07/27/09 | Cellphone | TEAML | Team Leader Cellphone July 27 - August 2, 2009 | 1 | 50.00 | 50.00 |
| 08/06/09 | PVCC Uniform | PRDEDUCT | Payroll Deduction - PVCC Uniform, Vest $40.00, 2 Green Shirts $20.00, Apron $10.00 | -1 | 70.00 | -70.00 |
| 08/06/09 | 080609 | ADVREPAY | ADVANCE LOAN REPAY | -1 | 170.00 | -170.00 |
| | 128621 | EMED | Medicare Tax W/H | | | -3.83 |
| | 128621 | EFICAB | Social Security Tax W/H | | | -16.36 |

|  |  |
|--|--|
| Net | **$3.63** |
| Gross | **$263.82** |

| Code | YTD Amount |
|------|------------|
| TEMPHOURS | 4888.16 |
| REIMBT | 1825.74 |
| TEAML | 517.00 |
| TEMPOT | 495.28 |
| REIMBS | 292.18 |
| EFED | -28.28 |
| PRDEDUCT | -70.00 |
| EMED | -85.56 |
| ADVANCE | -200.00 |
| EFICAB | -365.82 |
| ADVREPAY | -970.00 |
| **Net** | **$6,298.70** |

This check will be deposited to the following Account (s)

| Name | Type | R/T | Account ending | Amount |
|------|------|-----|----------------|--------|
| M.Roco | C | 063100277 | 5840 | 3.63 |
| | | | | $3.63 |

**EXHIBIT**

*tabbies*

A

DD Remittance Check No: 503152 Dated 07/30/2009

## REMITTANCE DETAIL

| Date | Ref | ItemCode | Description | Qty | Unit Price | Remitted |
|---|---|---|---|---|---|---|
| 07/23/09 | 129200 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4 | 7.42 | 29.68 |
| 07/23/09 | 129200 | TEMPHOURS | PLEASANT - F & B (3:45pm - 9:45pm) | 6 | 7.42 | 44.52 |
| 07/24/09 | 129200 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:15pm) | 4.25 | 7.42 | 31.54 |
| 07/24/09 | 129200 | TEMPHOURS | PLEASANT - F & B (4:45pm - 10:15pm) | 5.5 | 7.42 | 40.81 |
| 07/25/09 | 129200 | TEMPHOURS | PLEASANT - F & B (4:00pm - 10:30pm) | 6.5 | 7.42 | 48.23 |
| 07/26/09 | 129200 | TEMPHOURS | PLEASANT - F & B (9:00am - 1:30pm) | 4.5 | 7.42 | 33.39 |
| 07/26/09 | 129200 | TEMPOT | PLEASANT - F & B (1:30pm - 2:30pm) | 1 | 11.13 | 11.13 |
| 07/22/09 | 129200 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4 | 7.42 | 29.68 |
| 07/22/09 | 129200 | TEMPHOURS | PLEASANT - F & B (3:45pm - 9:00pm) | 5.25 | 7.42 | 38.96 |
| 07/30/09 | 073009 | REIMBT | Expenses Re-Imbursed for Gas July 22, 2009 | 1 | 20.00 | 20.00 |
| 07/20/09 | Team leader | TEAML | Team Leader Services July 20-26, 2009 | 1 | 45.00 | 45.00 |
| 07/30/09 | 073009 | ADVREPAY | ADVANCE LOAN REPAY | -1 | 300.00 | -300.00 |
| | 129200 | EMED | Medicare Tax W/H | | | -5.12 |
| | 129200 | EFICAB | Social Security Tax W/H | | | -21.88 |

|  |  |
|---|---|
| Net | $45.94 |
| Gross | $372.94 |

| Code | YTD Amount |
|---|---|
| TEMPHOURS | 4719.34 |
| REIMBT | 1825.74 |
| TEMPOT | 495.28 |
| TEAML | 422.00 |
| REIMBS | 292.18 |
| EFED | -28.28 |

DD Remittance Check No: 503088 Dated 07/23/2009

## REMITTANCE DETAIL

| Date | Ref | ItemCode | Description | Qty | Unit Price | Remitted |
|------|-----|----------|-------------|-----|------------|----------|
| 07/15/09 | 0722112109 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4 | 7.42 | 29.68 |
| 07/15/09 | 0722112113 | TEMPHOURS | PLEASANT - F & B (3:45pm - 9:00pm) | 5.25 | 7.42 | 38.96 |
| 07/16/09 | 0722112117 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:15pm) | 4.25 | 7.42 | 31.54 |
| 07/16/09 | 0722112123 | TEMPHOURS | PLEASANT - F & B (5:00pm - 9:30pm) | 4.5 | 7.42 | 33.39 |
| 07/17/09 | 0722112146 | TEMPHOURS | PLEASANT - F & B (8:45am - 2:00pm) | 5.25 | 7.42 | 38.96 |
| 07/17/09 | 0722112152 | TEMPHOURS | PLEASANT - F & B (5:00pm - 11:30pm) | 6.5 | 7.42 | 48.23 |
| 07/18/09 | 0722112154 | TEMPHOURS | PLEASANT - F & B (5:00pm - 11:30pm) | 6.5 | 7.42 | 48.23 |
| 07/19/09 | 0722112252 | TEMPHOURS | PLEASANT - F & B (9:00am - 12:45pm) | 3.75 | 7.42 | 27.83 |
| 07/19/09 | 0722112312 | TEMPOT | PLEASANT - F & B (12:45pm - 4:45pm) | 3 | 11.13 | 33.39 |
| 07/02/09 | Reim | REIMBT | Expenses Re-Imbursed for Gas July 2 - 19,2009 | 1 | 281.94 | 281.94 |
| 07/13/09 | Team Leader | TEAML | Team Leader Services July 13-19 | 1 | 45.00 | 45.00 |
| 07/23/09 | 072309 | ADVREPAY | ADVANCE LOAN REPAY | -1 | 300.00 | -300.00 |
|  | 0722112109 | EFED | Federal Income Tax W/H |  |  | -0.21 |
|  | 0722112109 | EMED | Medicare Tax W/H |  |  | -5.44 |
|  | 0722112109 | EFICAB | Social Security Tax W/H |  |  | -23.26 |

|  |  |
|-----|-----|
| Net | $328.24 |
| Gross | $657.15 |

| Code | YTD Amount |
|------|------------|
| TEMPHOURS | 4422.53 |
| REIMBT | 1805.74 |
| TEMPOT | 484.15 |
| TEAML | 377.00 |
| REIMBS | 292.18 |
| EFED | -28.28 |
| EMED | -76.61 |
| ADVANCE | -200.00 |
| EFICAB | -327.58 |
| ADVREPAY | -500.00 |
|  | ---------- |
| Net | $6,249.13 |

This check will be deposited to the following Account (s)

| Name | Type | R/T | Account ending | Amount |
|------|------|-----|----------------|--------|
| M.Roco | C | 063100277 | 5840 | 328.24 |
|  |  |  |  | ---------- |
|  |  |  |  | $328.24 |

Star One Staffing International, Inc

2414 Coral Way

Miami, FL 33145

305 908-1208

Wachovia Bank

067006432

7/16/2009

**503035**

*Void after 180 days*

**$120.08**

*\*\*\* ONE HUNDRED TWENTY and 08/100 DOLLARS \*\*\**

PAY TO THE
ORDER OF : Morena Roco
2414 Coral Way
Miami, FL 33145

MEMO:    E-Mail (07/16/09 02:43 PM)

_____
AUTHORIZED SIGNATURE

⑈⑈00503035⑈⑈ ⑆067006432⑆ 269360870953 2⑈

7/16/2009

Check No   503035

Star One Staffing International, Inc 2414 Coral Way Miami, FL 33145 305 908-1208

## REMITTANCE INFORMATION

Morena Roco 2414 Coral Way Miami, FL 33145

| Date | REF | Item Code | Description | Qty | Unit Price | Due | Remitted |
|------|-----|-----------|-------------|-----|------------|-----|----------|
| 07/09/2009 Thu | 129196 | TEMPHOURS | PLEASANT - F & B (9:45am - 2:00pm) | 4.25 | 7.42 | $31.54 | 31.54 |
| 07/10/2009 Fri | 129196 | TEMPHOURS | PLEASANT - F & B (4:00pm - 11:30pm) | 7.5 | 7.42 | $55.65 | 55.65 |
| 07/08/2009 Wed | 129196 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/08/2009 Wed | 129196 | TEMPHOURS | PLEASANT - F & B (4:00pm - 9:15pm) | 5.25 | 7.42 | $38.96 | 38.96 |
| 07/12/2009 Sun | 129196 | TEMPOT | PLEASANT - F & B (2:45pm - 3:00pm) | 0.25 | 11.13 | $2.78 | 2.78 |
| 07/09/2009 Thu | 129196 | TEMPHOURS | PLEASANT - F & B (5:00pm - 9:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/10/2009 Fri | 129196 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/11/2009 Sat | 129196 | TEMPHOURS | PLEASANT - F & B (4:45pm - 10:00pm) | 5.25 | 7.42 | $38.96 | 38.96 |
| 07/12/2009 Sun | 129196 | TEMPHOURS | PLEASANT - F & B (9:00am - 2:45pm) | 5.75 | 7.42 | $42.67 | 42.67 |
| 07/06/2009 Mon | Team Leader | TEAML | Team Leader Services July 6-12, 2009 | 1. | 47.00 | $47.00 | 47.00 |
| 07/16/2009 Thu | 071609 | ADVREPAY | ADVANCE LOAN REPAY | -1. | 200.00 | -$200.00 | -200.00 |
| | 129196 | EMED | Medicare Tax W/H | | | | -5.03 |
| | 129196 | EFICAB | Social Security Tax W/H | | | | -21.49 |

40.25

| | | |
|---|---|---|
| | Net | **120.08** |
| | Gross | **$346.60** |

| Code | YTD Amount |
|------|-----------|
| TEMPHOURS | 4,125.71 |
| REIMBT | 1,523.80 |
| TEMPOT | 450.76 |
| TEAML | 332.00 |
| REIMBS | 292.18 |
| ADVANCE | -200.00 |
| ADVREPAY | -200.00 |
| EFED | -28.07 |
| EMED | -71.17 |
| EFICAB | -304.32 |
| **Net** | **5,920.89** |

This check will be deposited to the following Account(s) :

| Name | Type | R/T | Account ending | Amount |
|------|------|-----|----------------|--------|
| M.Roco | C | 063100277 | 5840 | $120.08 |
| | | | | $120.08 |

Star One Staffing International, Inc
2414 Coral Way
Miami, FL 33145
305 908-1208

Wachovia Bank

067006432

**502977**

7/9/2009

*Void after 180 days*

$323.47

*** THREE HUNDRED TWENTY THREE and 47/100 DOLLARS ***

PAY TO THE
ORDER OF : Morena Roco
            2414 Coral Way
            Miami, FL 33145

MEMO:    E-Mail (07/09/09 05:08 PM)

_____
AUTHORIZED SIGNATURE

⑈"005029 77"⑈  ⑉:067006432:⑉  269360870953 2"⑈

7/9/2009                                        Check No   502977

Star One Staffing International, Inc 2414 Coral Way Miami, FL 33145 305 908-1208

## REMITTANCE INFORMATION

Morena Roco 2414 Coral Way Miami, FL 33145

| Date | | REF | Item Code | Description | Qty | Unit Price | Due | Remitted |
|------|---|-----|-----------|-------------|-----|-----------|-----|----------|
| 07/02/2009 | Thu | 0707154625 | TEMPHOURS | PLEASANT - F & B (5:00pm - 9:45pm) | 4.75 | 7.42 | $35.25 | 35.25 |
| 07/04/2009 | Sat | 0707154641 | TEMPHOURS | PLEASANT - F & B (4:00pm - 10:30pm) | 6.5 | 7.42 | $48.23 | 48.23 |
| 07/05/2009 | Sun | 0707154733 | TEMPHOURS | PLEASANT - F & B (8:45am - 1:30pm) | 4.75 | 7.42 | $35.25 | 35.25 |
| 07/04/2009 | Sat | 0707154637 | TEMPHOURS | PLEASANT - F & B (9:30am - 3:30pm) | 6. | 7.42 | $44.52 | 44.52 |
| 07/01/2009 | Wed | 0707154608 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/02/2009 | Thu | 0707154611 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/05/2009 | Sun | 0707154745 | TEMPOT | PLEASANT - F & B (1:30pm - 2:45pm) | 1.25 | 11.13 | $13.91 | 13.91 |
| 07/03/2009 | Fri | 0707154630 | TEMPHOURS | PLEASANT - F & B (10:00am - 2:00pm) | 4. | 7.42 | $29.68 | 29.68 |
| 07/03/2009 | Fri | 0707154633 | TEMPHOURS | PLEASANT - F & B (5:00pm - 11:00pm) | 6. | 7.42 | $44.52 | 44.52 |
| 06/29/2009 | Mon | Team Leader | TEAML | Team Leader Services June 29 - July 5, 2009 | 1. | 47.00 | $47.00 | 47.00 |
| 07/07/2009 | Tue | Reim | REIMBT | Expenses Re-Imbursed  for Change Oil and Glass Installation | 1. | 193.12 | $193.12 | 193.12 |
| 07/09/2009 | Thu | 070909 | ADVANCE | PAYROLL ADVANCE | -1. | 200.00 | -$200.00 | -200.00 |
| | | 0707154625 | EMED | Medicare Tax W/H | | | | -5.19 |
| | | 0707154625 | EFICAB | Social Security Tax W/H | | | | -22.18 |

41.25

|  |  |
|---|---|
| **Net** | **323.47** |
| **Gross** | **550.84** |

| Code | YTD Amount |
|------|-----------|
| TEMPHOURS | 3,828.89 |
| REIMBT | 1,523.80 |
| TEMPOT | 447.98 |
| REIMBS | 292.18 |
| TEAML | 285.00 |
| ADVANCE | -200.00 |
| EFED | -28.07 |
| EMED | -66.14 |
| EFICAB | -282.83 |
| **Net** | **5,800.81** |

This check will be deposited to the following Account(s) :

| Name | Type | R/T | Account ending | Amount |
|------|------|-----|----------------|--------|
| M.Roco | C | 063100277 | 5840 | $323.47 |
| | | | | $323.47 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by
ANDREW M. CUOMO, Attorney General of the
State of New York,

                                        Petitioner,

                    -against-

STAR ONE STAFFING, INC.; STAR ONE
STAFFING INTERNATIONAL, INC.; ROBERTO
(BOBBY) VILLANUEVA; MARY JANE HAGUE,

                                        Respondents.

**VERIFIED PETITION**

Index No.

Petitioner, the People of the State of New York, by their attorney, ANDREW M.

CUOMO, Attorney General of the State of New York, as and for their Petition, respectfully

alleges:

### PRELIMINARY STATEMENT

1.        Petitioner brings this special proceeding pursuant to Executive Law § 63(12) for

injunctive relief, an accounting, restitution, and damages against Respondents for repeated and

persistent illegality by: (1) making prohibited deductions from wages of guestworkers from the

Philippines who were employed by Star One Staffing, Inc. and Star One Staffing International,

Inc.[1] to work at country clubs and other food and beverage services industry establishments in

New York ("Employees"), in violation of Labor Law § 193; (2) failing to pay Employees any

wages for some hours worked, in violation of Labor Law §§ 191, 193, and 198; (3) failing to pay

---

[1] Star One Staffing, Inc. and Star One Staffing International, Inc. are hereinafter
collectively referred to as "Star One."

Page 1 of 15

EXHIBIT

B

Employees overtime at the required rate, in violation of Labor Law § 652 and 12 N.Y.C.R.R. § 137-1.3; and (4) failing to pay Employees their earned wages within the time limits set by Labor Law § 191.  The Petitioner seeks relief from April 2002 until the present.

**PARTIES**

2.    Petitioner, Andrew Cuomo, the Attorney General of the State of New York, on behalf of the People of the State of New York, may seek to enjoin the continuance of repeated or persistent illegality in the transaction of business in the State of New York, may seek an accounting of the business practices in question during the limitations period, and may recover restitution and damages for all victims, in accordance with Executive Law § 63(12).  The Attorney General has a principal office in New York County, New York.

3.    Respondents Star One Staffing, Inc. and Star One Staffing International, Inc., are active foreign business corporations that are registered with the New York Secretary of State to do business in the State of New York.  Star One is a staffing agency that employs seasonal workers, including guestworkers from the Philippines who are authorized to work temporarily in the U.S. pursuant to H-2B visas.  Star One provides its employees to country clubs and other food and beverage services industry establishments in New York.

4.    Star One has conducted its business in New York from four residences in Nassau County located at 54 Coolidge Avenue in Roslyn Heights, New York, 41 Harding Avenue in Roslyn Heights, New York, 1026 Glen Cove Avenue in Glen Head, New York, and 600 Cedar Swamp Road in Glen Head, New York for varying periods of time since at least on or about August of 2007 until at least on or about November 30, 2007.

5.    Respondent Roberto (Bobby) Villanueva is a vice president, manager/supervisor,

Page 2 of 15

recruiter, and/or agent of Star One. Respondent Villanueva is sued in his individual capacity pursuant to Executive Law § 63(12).

6.    Respondent Mary Jane Hague is the President, Treasurer, and a Director of Star One Staffing, Inc. She is also the President and a Director of Star One Staffing International, Inc. Respondent Hague is sued in her individual capacity pursuant to Executive Law § 63(12).

## RELEVANT STATUTORY PROVISIONS

7.    Executive Law § 63(12) provides that "[w]henever any person shall engage in repeated . . . illegal acts or otherwise demonstrate persistent . . . illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the State of New York, to the supreme court of the State of New York . . . for an order enjoining the continuance of such business activity or of any . . . illegal acts, directing restitution and damages."

8.    Labor Law § 193(1) provides:

 No employer shall make any deductions from the wages of an employee, except deductions which:

> (a) are made in accordance with the provisions of any law or any rule or regulations issued by any government agency; or

> (b) are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues and assessments to a labor organization, and similar payments for the benefit of the employee.

9.    Failure to pay promised wages is illegal under Article 6 of the Labor Law. Labor Law § 191 requires that promised wages must be paid on time, with the required frequency as

determined by the classifications set forth in the statute. Labor Law § 193 specifies the

deductions that may be made from wages, and Labor Law § 190(1) defines "wages" for the

purposes of Article 6 as including all earnings of an employee for labor or services rendered,

regardless of the basis for determining the amount of the wages. Under Labor Law § 198(3),

"[a]ll employees shall have the right to recover full wages, benefits and wage supplements

accrued during the six years previous." In addition, Labor Law § 663, which provides for the

amount of recovery in overtime cases, necessarily includes the promised wage as a basis for

computing the "one and one-half times the regular rate of pay" that is due when a covered

employee works more than 40 hours in a workweek. See Labor Law § 652; 12 N.Y.C.R.R. §

137-1.3.

      10.     The Minimum Wage Act, Article 19 of the Labor Law allows the Commissioner

of Labor to issue wage orders modifying minimum wages in certain industries. See Labor Law §

652. Part 137 of the Codes, Rules, and Regulations of the State of New York contains the

minimum wage order for the restaurant industry. 12 N.Y.C.R.R. § 137-1.3 provides for overtime

wages of one and one-half times an employee's regular hourly rate of pay for hours worked in

excess of forty hours in one workweek.

      11.     Labor Law § 191(1)(a) requires an employer to pay manual workers "weekly and

not later than seven calendar days after the end of the week in which the wages are earned."

      12.     Labor Law §§ 198 and 663 provide for liquidated damages in the amount of

twenty-five percent of the underpayments when an employer willfully underpays wages.

      13.     For the purposes of Article 6 of the Labor Law, which includes the limitations on

deductions from pay, the requirement to pay promised wages for work that has been done, and

the time limits for paying wages, the term "employer" means "any person, corporation, or association employing any individual in any occupation, industry, trade, business or service," with an exception that is not relevant here, and the term "employee" means "any person employed for hire by an employer in any employment." Labor Law §§ 190(2) and (3).

14.    For the purposes of Article 19 of the Labor Law, the Minimum Wage Act, which is the basis for the regulation requiring overtime payments, the term "employer" means "any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons acting as employer," and the term "employee" means "any individual employed or permitted to work by an employer in any occupation," with specified exceptions not relevant here.  Labor Law § 651(5) and (6).

15.    The general definitions section of the Labor Law further defines "employed," for the purposes of all of the articles within the Labor Law, including but not limited to Articles 6 and 19, as being "permitted or suffered to work." Labor Law § 2(7).

16.    Labor Law §§ 198 and 663 set a limitations period of six years for claims of illegal deductions from wages, failure to pay promised wages, failure to pay required overtime, and failure to pay within the time limits set by law.

17.    CPLR §§ 5001 and 5004 provide for prejudgment interest at a rate of nine percent per annum.

18.    CPLR § 8303(a)(6) provides that, in addition to costs, a court may award an allowance to the Attorney General of up to $2,000.00 against each respondent if the Attorney General prevails in a proceeding brought under (among other provisions) Executive Law § 63(12).

19.     The H-2B program is authorized under the Immigration and Nationality Act

("INA"). See 8 U.S.C. § 1184(c)(1). The H-2B program permits employers to employ

individuals to work in the United States on a temporary basis. See 8 U.S.C. §

1101(a)(15)(H)(ii)(b). Such temporary employees are referred to as "nonimmigrant aliens" under

federal immigration law, see 8 U.S.C. § 1101(a)(15), and also referred to in lay terms as

guestworkers. Regulations issued by U.S. Citizenship and Immigration Service ("USCIS"), see

8 C.F.R. § 214.2, and the U.S. Department of Labor ("USDOL"), see 20 C.F.R. Part 655, govern

the labor certification process with which employers must comply in order to obtain an H-2B

visa. See 8 C.F.R. § 214.2(h)(1)(D); 20 C.F.R. §§ 655.0 to 655.4. Employers seeking to hire

employees on an H-2B visa must first submit an application for temporary labor certification,

known as an Application for Alien Employment Certification (referred to as an "ETA 750"), to

the state workforce agency and the USDOL for approval. Id. In such applications employers

certify under penalty of perjury that, inter alia, "The job opportunity's terms, conditions and

occupational environment are not contrary to Federal, State or local law." If an ETA 750 is

certified by the USDOL, then the employer must submit a petition for an H-2B visa to USCIS for

approval. See 8 C.F.R. § 214.2(h)(6).

## FACTS

20.     Star One recruits and employs Filipino individuals to work in New York, among

other states, pursuant to H-2B visas as guestworkers performing food and beverage services at

various country clubs and other establishments in the food and beverage services industry.

21.     In 2006 and 2007, Star One Staffing, Inc. submitted ETA 750 applications to the

New York State Department of Labor ("NYSDOL"), the designated state workforce agency in

New York, and the U.S. Department of Labor to employ a total of at least 154 H-2B

guestworkers to work as waiters/waitresses in Nassau and Suffolk counties in New York.

Specifically, the USDOL certified five (5) ETA 750 applications submitted by Star One Staffing,

Inc. to employ: (1)  33 waiters/waitresses to work from May 1, 2007 to January 30, 2008 at Glen

Head Country Club, Inc., located at 240 Glen Cove Road, Glen Head, New York 11545; (2) 31

waiters/waitresses to work from August 10, 2006 to January 30, 2007 at Glen Head Country

Club, Inc.; (3) 45 waiters/waitresses to work from June 7, 2007 to December 30, 2007 at

Thatched Cottage At the Bay, located at 441 E. Main Street, Centerport, New York 11721; (4) 25

waiters/waitresses to work from April 1, 2007 to January 30, 2008 at Muttontown Country Club,

located at 5931 Northern Blvd., East Norwich, New York 11732; and, (5) 20 waiters/waitresses

to work from August 26, 2006 to January 30, 2007 at Muttontown Country Club.  Respondent

Mary Jane Hague, President of Star One Staffing, Inc., signed four (4) of these ETA 750s.

      22.     All five (5) of these ETA 750s included a certification by Star One Staffing, Inc.

under penalty of perjury that "the job opportunity's terms, conditions and occupational

environment are not contrary to Federal, State or local law."

      23.     In 2007, USCIS approved at least six (6) H-2B visa petitions submitted by Star

One Staffing, Inc. to employ workers in New York ("2007 Star One H-2B Petitions").  These

2007 Star One H-2B Petitions authorized Star One Staffing, Inc. to employ ninety (90) aliens to

work full-time in New York at either Glen Head Country Club, Thatched Cottage At the Bay, or

Muttontown Country Club.  Respondent Mary Jane Hague signed four (4) of these 2007 Star One

H-2B Petitions.

      24.     Between April and August of 2007, Respondent Roberto ("Bobby") Villanueva

and other Star One representatives recruited Filipino H-2B workers who were then working for other employers in Orlando, Florida, to work for Star One in New York providing food and beverage services at country clubs and other food and beverage services industry establishments. During this time period, Star One representatives, including Mr. Villanueva, held a number of recruitment meetings in Orlando, Florida with such H-2B workers where they were promised that they would get at least 40 hours of work each week and wage rates of $10.00 per hour if they worked for Star One in New York. Star One representatives, including Mr. Villanueva, also promised that employees would be paid for training in New York.

25.     Between April and August 2007, at least ten (10) H-2B workers who had been working in Orlando ("the Star One Complainants"[2]) agreed to work for Star One in New York under H-2B visa(s).

26.     None of the Star One Complainants signed any documents authorizing Star One to make any deductions from their wages for housing, food, or transportation.

27.     In or about late August and early September 2007, the Star One Complainants were transported by Mr. Villanueva and Star One from Florida to Long Island, New York.

28.     The Star One Complainants joined other food and beverage workers in New York who were already employed by Star One. Additional Star One employees arrived after the Star One Complainants began working for Star One.

29.     Star One housed its employees, including the Star One Complainants other wait staff, drivers, and supervisors, in four overcrowded staff houses in Nassau County, New York.

---

[2] These ten individuals, the Star One Complainants, are ███████████████████

30.    Star One transported its employees, including the Star One Complainants, to and from the four (4) Star One staff houses and the country clubs and other food and beverage services industry establishments in New York where they worked.

31.    The Star One Complainants' job duties included serving food and drinks, taking orders, and setting, bussing, and clearing tables at the country clubs and banquet/catering hall.

32.    The Star One Complainants worked up to sixty (60) hours a week and up to six (6) days a week at the various country clubs and/or the banquet/catering hall in New York.  But the Star One Complainants' work schedules were irregular and the number of days they worked each week varied from as many as six (6) to as few as zero (0).

33.    The Star One Complainants worked for entire weeks and months until they got paid any wages.  Although Star One gave seven (7) of the Star One Complainants cash advances before they were paid wages, even the cash advances were generally not paid until at least several weeks or even a month after they began working for Star One.

34.    When Star One finally paid the Star One Complainants, they received little in net wages because of the large amount of money that Star One deducted from their gross wages for housing, food, and transportation.

35.    When the Star One Complainants were paid, Star One deducted the following amounts from their wages:

a.    $100.00 per week for housing;

b.    $60.00 per week for transportation; and

c.    $40.00 per week for food.

These deductions for housing, transportation, and food violated Labor Law § 193.

Page 9 of 15

36.     For between two to four of their initial shifts, the Star One Complainants trained

at Thatched Cottage At the Bay. This work included observing other food and beverage service

workers doing their jobs, as well as serving food and beverages and performing other related

tasks. The Star One Complainants were not paid for these initial two to four shifts that they

worked at Thatched Cottage At the Bay, in violation of Labor Law §§ 191, 193, 198, and 663.

37.     Star One did not pay some of the Star One Complainants for other hours that they

worked, also in violation of Labor Law §§ 191, 193, 198, and 663.

38.     When the Star One Complainants worked more than 40 hours in a workweek for

Star One, they were not paid one and one-half times their regular hourly rate of pay for those

hours, in violation of  Labor Law §§ 652 and 663 and 12 N.Y.C.R.R. § 137-1.3.

39.     Two (2) of the Star One Complainants, ██████ and ██████ received only

two pay slips from Star One, one in November and the other in December of 2007. The eight (8)

other Star One Complainants received only three pay slips from Star One, once in October,

November, and December of 2007. Therefore, Star One did not pay the Star One Complainants

weekly, and the Respondents violated Labor Law § 191 when Star One paid the workers later

than seven (7) calendar days after the end of the week in which the wages were earned.

40.     Respondent Roberto (Bobby) Villanueva had actual knowledge of the illegality

alleged above and personally participated in those illegalities. Therefore, he is personally liable

for the illegalities in accordance with Executive Law § 63(12).

41.     Mr. Villanueva recruited food and beverage workers to work for Star One in New

York; made promises to the potential workers about wages, hours, and living conditions;

informed Star One employees about the deductions that would be and were made from their

wages, provided reasons for those deductions, and distributed to the employees documents addressing earnings and deductions; told Star One employees how frequently they would be paid; assigned workers to work at particular locations and/or set their schedules; drove Star One workers to their workplaces; handed pay slips to employees; and handled complaints from the employees about their wages, including deductions and late payments, among other complaints.

42.    Respondent Mary Jane Hague had actual knowledge of the illegality alleged above and personally participated in that illegality.  Therefore, she is personally liable for the illegalities in accordance with Executive Law § 63(12).

43.    As President, Treasurer, and a Director of Star One Staffing, Inc., and as the President and a Director of Star One Staffing International, Inc., Ms. Hague exercised control over Star One's policies concerning the payment of wages and deductions from wages.

44.    Ms. Hague signed four (4) ETA 750 applications submitted by Star One Staffing, Inc. to the NYSDOL and that were certified by the USDOL, to employ a total of 123 H-2B workers/waitresses at three (3) food and beverage services establishments in New York; signed four (4) H-2B visa petitions that Star One Staffing, Inc. submitted to and that were approved by USCIS giving Star One Staffing, Inc. permission to employ ninety (90) H-2B workers as full-time waiters at several food and beverage services establishments in New York; and, signed memoranda and/or written communications to Star One employees regarding wage rates, the $800 per month deductions from wages for housing, food, and transportation costs, and other personnel issues, and was listed as a person to contact if employees had any questions about their earnings.

45.    Respondents knew or should have known that their conduct violated the deductions, promised wages, overtime, and prompt payment provisions of the Labor Law and the

regulations thereunder.

46.    Star One and Mr. Villanueva knew about the number of hours that the workers worked because they set their schedules. Star One and Mr. Villanueva knew when the workers were paid, how much they were paid, and what deductions were made from their wages because, between September and November, 2007, Mr. Villanueva handed out pay slips, received complaints about wages and deductions from the workers, and responded to those complaints. Star One and Mary Jane Hague knew about the illegal deductions because they set the policy for how much would be taken in deductions from the workers' pay, as reflected in the October 12, 2007 memorandum signed by Ms. Hague and described above.

## AS AND FOR A FIRST CAUSE OF ACTION: ILLEGAL DEDUCTIONS

47.    Petitioner realleges and incorporates paragraphs 3-46 as fully stated herein.

48.    Respondents willfully violated Labor Law § 193. During the limitations period of six years, Respondents made illegal deductions from wages that Star One employees earned. These illegal deductions were made for such items as housing, transportation, and food.

49.    By repeatedly and persistently violating Labor Law § 193, Respondents violated Executive Law § 63(12).

## AS AND FOR A SECOND CAUSE OF ACTION: FAILURE TO PAY PROMISED WAGES

50.    Petitioner realleges and incorporates paragraphs 3-49 as fully stated herein.

51.    Respondents willfully violated Labor Law §§ 193, 191, 198(3), and 663 by failing to pay Star One employees the wages that were promised to them for work that they had done. Star One employees were not paid for hours that they were training and for other hours that they worked.

52.    By repeatedly and persistently violating Labor Law §§ 193, 191, 198(3), and 663 Respondents violated Executive Law § 63(12).

**AS AND FOR A THIRD CAUSE OF ACTION:**
**FAILURE TO PAY REQUIRED OVERTIME**

53.    Petitioner realleges and incorporates paragraphs 3-52 as fully stated herein.

54.    Respondents willfully violated Labor Law § 652 and 12 N.Y.C.R.R. § 137-1.3 by failing to pay Star One employees one and one-half times their regular hourly rates of pay for hours that they worked in excess of 40 in a workweek.

55.    By repeatedly and persistently violating Labor Law §§ 652 and 663 and 12 NYCRR § 137-1.3, Respondents violated Executive Law § 63(12).

**AS AND FOR A FOURTH CAUSE OF ACTION:**
**FAILURE TO PAY ON A TIMELY BASIS**

56.    Petitioner realleges and incorporates paragraphs 3-54 as fully stated herein.

57.    Respondents willfully violated Labor Law §191(1)(a) by failing to pay Star One employees weekly and not later than seven calendar days after the end of the week in which the wages were earned.

58.    By repeatedly and persistently violating Labor Law § 191(1)(a), Respondents violated Executive Law § 63(12).

WHEREFORE, Petitioner requests that this court grant relief pursuant to Executive Law § 63(12), Labor Law §§ 191, 193, 198, 652, and 663, and 12 NYCRR § 137-1.3, against Respondents by issuing an order and judgment:

1.    Permanently enjoining Respondents, their agents, representatives, employees, successors and assigns and any corporation or other entity in which they are a principal owner,

officer or manager from violating Executive Law § 63(12), Labor Law §§ 191, 193, 198, 652, and 663, and 12 NYCRR § 137-1.3, and from engaging in the illegal practices alleged herein;

2.    Permanently enjoining Respondents, their agents, representatives, employees, successors and assigns and any corporation or other entity in which they are a principal owner, officer or manager, from either employing or providing workers to other employers in the State of New York until a $200,000.00 performance bond is filed with the Attorney General by a surety or bonding company licensed by and in good standing with the New York State Department of Insurance, guaranteeing that Respondents comply with any injunction which may be entered herein, with the proceeds of that bond providing a fund for restitution, civil penalties and costs should employees be damaged by the future conduct of Respondents;

3.    Directing Respondents to provide a full accounting vis-a-vis each Star One employee who worked in New York from April 2002 to the present, including the dates of each employee's employment, including the starting date and ending date, if any, and the hours and dates that each employee worked; each employee's rate(s) of pay, including explanations for why each change in an employee's wage rate was made; the amount of each deduction taken from each employee's earnings, and the date of and reason for each deduction; and the dates of each payment to each employee.

4.    Directing Respondents to make full monetary restitution for illegal deductions from wages, failure to pay promised wages, and failure to pay overtime, including twenty-five percent liquidated damages and prejudgment interest at the rate of nine percent per annum, since April 2002, including but not limited to the monetary relief due to the ten (10) Star One Complainants: $19,316.29 in wage underpayments, plus $4,829.07 in liquidated damages, plus prejudgment interest at the rate of nine percent per annum.

5.    Awarding Petitioner costs and an additional allowance in the amount of $2,000.00

against each Respondent pursuant to CPLR § 8303(a)(6);

6.    Assessing joint and several liability of each Respondent for all restitution,

liquidated damages, costs, allowances, and interest owed from April 2002 to the present;

7.    Authorizing Petitioner to docket as a money judgment any order issued by the

Court in this proceeding directing the payment of money by Respondents pursuant to CPLR §

2222; and

8.    Granting Petitioner such other and further relief as this Court finds just and

proper.

Dated: New York,  New York
       April _____, 2008

                     Respectfully submitted:

                     ANDREW M. CUOMO
                     Attorney General of the State of New York
                     Attorney for Petitioner

                     Jennifer S. Brand
                     Assistant Attorney General
                       In Charge of the Labor Bureau

                     C. Michael Higgins
                     Judith Marblestone
                     Assistant Attorneys General
                       of Counsel

                     BY:    _____

                            C. MICHAEL HIGGINS
                            Assistant Attorney General

                     Office of the Attorney General
                     120 Broadway, 26th Floor
                     New York, New York 10271-0332
                     (212) 416-8713

PEOPLE OF THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
LABOR BUREAU

<table>
<tr><td>IN THE MATTER OF THE INVESTIGATION<br>OF ANDREW M. CUOMO, ATTORNEY<br>GENERAL OF THE STATE OF NEW YORK,<br><br>OF<br><br>STAR ONE STAFFING, INC.; STAR ONE<br>STAFFING INTERNATIONAL, INC.;<br>ROBERTO (BOBBY) VILLANUEVA; MARY<br>JANE HAGUE; JOHN C. CARRUTHERS;<br>RUTH CARRUTHERS; and any other owners and<br>corporate officers of Star One Staffing, Inc. and/or<br>Star One Staffing International, Inc.</td><td>ASSURANCE OF DISCONTINUANCE<br>PURSUANT TO NEW YORK<br>EXECUTIVE LAW SECTION 63,<br>SUBDIVISION 15</td></tr>
</table>

WHEREAS, the People of the State of New York, by the Attorney General of the State of

New York ("Attorney General"), commenced an investigation ("Investigation") pursuant to New

York Executive Law, Section 63, subdivision 12, of Star One Staffing, Inc., Star One Staffing

International, Inc., Roberto (Bobby) Villanueva, Mary Jane Hague, John C. Carruthers, Ruth

Carruthers, and any other owners and corporate officers of Star One Staffing, Inc. and/or Star

One Staffing International, Inc. (collectively referred to as "Star One") concerning allegations

that Star One violated sections of the New York Labor Law and regulations promulgated

thereunder pertaining to the payment of wages;

WHEREAS, Star One Staffing, Inc., is an active foreign corporation authorized since

October 2001 to do business in New York under the laws of the State of New York, with a

principal place of business in Queens County in New York and principal offices located at 2414

Coral Way in Miami, Florida.  Star One Staffing, Inc. is primarily engaged in business activity in

New York as a staffing agency providing temporary workers, including temporary guest workers



EXHIBIT

C

authorized to work under the H-2B program, to provide food and beverage services to country

clubs and other establishments in the food and beverages services industry;

WHEREAS, Star One Staffing International, Inc., is an active foreign corporation

authorized since April 2007 to do business in New York under the laws of the State of New

York, with a principal place of business in Nassau County in New York and principal offices

located at 2414 Coral Way in Miami, Florida.  Star One Staffing International, Inc. is primarily

engaged in business activity in New York as a staffing agency providing temporary workers,

including temporary guest workers authorized to work under the H-2B program, to provide food

and beverages services to country clubs and other establishments in the food and beverage

services industry;

WHEREAS, Mary Jane Hague is the president, treasurer, a director, and an owner of

Star One Staffing, Inc. and the president, a director, and an owner of Star One Staffing

International, Inc.;

WHEREAS, Roberto Villanueva is the vice president of Star One Staffing

International, Inc.;

WHEREAS, John C. Carruthers is the secretary, treasurer, a director, and an owner

of Star One Staffing International Inc.;

WHEREAS, Ruth Carruthers is the vice president, secretary, a director, and an owner

of Star One Staffing, Inc.;

WHEREAS, the: (i) New York Labor Law, Article 6 (Payment of Wages), §§ 190 et

seq. and Article 19 (Minimum Wage Act), §§ 650 et seq. and (ii) New York Codes, Rules,

and Regulations ("N.Y.C.R.R."), Title 12, Chapter II, Subchapter B, Part 137 (Minimum

Wage Order for the Restaurant Industry) and Title 12, Chapter II, Subchapter G, Part 195

(Wage Deductions) (collectively "Wage and Hour Laws"), <u>inter alia</u>, prohibit certain deductions from wages; require full and timely payment of earned wages at the rate of no less than minimum wage and overtime compensation for non-exempt employees at the rate of one and one-half times their regular rate of pay; prohibit discrimination against employees because an employee has made a complaint about and/or has or is about to testify about his or her employer's violation of the Labor Law; and provide other rights to eligible employees and remedies for failure to comply therewith;

WHEREAS, complaints have been made to the Attorney General that Star One has violated the Wage and Hour Laws;

WHEREAS, the Attorney General's Investigation found that Star One employed at least ninety-four (94) workers to work at country clubs and other food and beverage services industry establishments in the State of New York from May 2006 to December 2006 and from April 2007 to December 2007 (referred to as the "Star One Employees");

WHEREAS, the Attorney General's Investigation found that Star One (1) made deductions from some Star One Employees' wages for housing, food, and transportation costs of up to Eight Hundred and 00/100 Dollars ($800.00) per month; (2) failed to pay some Star One Employees the required overtime for hours worked over forty in a week; (3) failed to pay some Star One Employees the required minimum wage; (4) failed to pay some Star One Employees earned wages for some hours worked, including but not limited to "training"; (5) failed to pay some Star One Employees their earned wages each week; and (6) attempted to discriminate against some Star One Employees;

WHEREAS, the Attorney General is willing to accept the terms of this Assurance of Discontinuance pursuant to New York Executive Law § 63(15) in lieu of commencing a

statutory special proceeding pursuant to New York Executive Law § 63(12);

IT NOW APPEARING THAT Star One desires to settle and resolve the Investigation without admitting or denying the Attorney General's findings. The Attorney General and Star One hereby enter into this Assurance of Discontinuance.

IT IS NOW STIPULATED AND AGREED, by and between the Attorney General and Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth Carruthers as follows:

### Definitions

**"Assurance"** or **"AOD"** refers to this Assurance of Discontinuance, AOD # 08-129.

**"Star One"** refers to Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, Ruth Carruthers, and any individual, company, and/or companies which are successors in interest to any of the named companies or which may hereafter be formed by any of the named companies or by any owners, corporate officers, directors, and/or supervisors/managers of Star One Staffing, Inc. and/or Star One Staffing International, Inc.

**"Star One Employees"** refers to those employees of Star One who were employed by Star One to work at country clubs and other food and beverage services industry establishments in New York State during the period, in whole or in part, of May 2006 through December 2006 and April 2007 through December 2007 (the "Covered Period").

### *Prospective Relief*

1.  Star One will pay the sum of One Hundred Thirteen Thousand Four Hundred Fifty Four and 00/100 Dollars ($113,454.00) (the "Settlement Fund") in full

settlement of the Investigation.

2.    The terms of payment are as follows:

a.    Star One will pay the sum of Twenty Five Thousand and 00/100 Dollars
($25,000.00) upon full execution of this Assurance.

b.    Star One will pay the sum of Eighty Eight Thousand Four Hundred Fifty
Four and 00/100 Dollars ($88,454.00) within one hundred twenty (120)
days of full execution of this Assurance.

c.    All payments must be in the form of a certified check, bank check, money
order, or attorney's check made payable to "The New York State Attorney
General's Office," and sent by certified mail, overnight delivery, or hand-
delivery to the New York State Attorney General's Office, attention
Assistant Attorney General C. Michael Higgins, 120 Broadway, 26th Floor
– Labor Bureau, New York, New York, 10271-0332.  All payments shall be
deemed to have been made when the checks are received by the New York
State Attorney General's Office; however, any payment made by a check
that is not honored shall be deemed not to have been made at all.

3.    The payments and all correspondence related to this Assurance must reference
"AOD # 08-129."

4.    The Attorney General has sole and absolute discretion to determine through a
claims process which Star One Employees who were employed, in whole or in
part, during the Covered Period shall be eligible for to receive a portion of the
Settlement Fund and to determine the amount of such payment.

5.    No later than ~~fifteen (15)~~ thirty 30 ᵗʰ days after full execution of this Assurance, for each and

5

every one of the Star One Employees who was employed by Star One during the
Covered Period, Star One will provide the Attorney General with the following
information already in Star One's possession and/or that comes into its possession
during the period ending January 10, 2010: (i) names; (ii) last known address in
the United States; (iii) last known address in the employee's home country (if
other than the United States); (iv) last known telephone number(s) in the United
States; (v) last known telephone number(s) in the employee's home country (if
other than the United States); (vi) any and all known email address(es); and, (vii)
any and all known bank account number(s), as well as the bank name(s) and type
of bank account (e.g., for employees whose wages Star One paid by direct
deposit).

6.    The Settlement Fund will only be distributed to those Star One Employees who
complete and sign a copy of the Release attached to this Assurance as Exhibit
A.

7.    At the time of signing this Assurance, Mary Jane Hague, Roberto Villanueva,
John C. Carruthers, and Ruth Carruthers will each execute an Affidavit of
Confession of Judgment, attached to this Assurance as Exhibit B, confessing
judgment, jointly and severally, in the full amount of eight-eight thousand, four-
hundred and fifty-four dollars ($88,454.00). The Affidavits of Confession of
Judgment shall be held by the Attorney General and may only be filed if the
payment of this amount is not made on or before the applicable date as
specified in paragraph 2(b) above. In the event that Star One Staffing, Inc., Star
One Staffing International, Inc., their officers, directors, and owners including,

but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth Carruthers comply with the terms of this Assurance of Discontinuance, the Attorney General shall decline to file the Affidavits of Confession of Judgment. If the $88,454.00 referenced above is paid timely, then the Confessions of Judgment referenced in this Assurance of Discontinuance shall become null and void. Susan Eisenberg, Esq., counsel for Star One Staffing, Inc., Star One Staffing International, Inc., Mary Jane Hague, Roberto Villanueva, John C. Carruthers, and Ruth Carruthers, will hold in escrow the social security numbers of Mary Jane Hague, Roberto Villanueva, John C. Carruthers, and Ruth Carruthers, as well as the EINs of Star One Staffing, Inc. and Star One Staffing International, Inc. In the event that the payment of the Settlement Fund is not made on or before the applicable dates as specified in paragraph 2 above, Ms. Eisenberg will provide this information to the Attorney General within five (5) days of the Attorney General's written request via certified mail to their attorney, Susan N. Eisenberg, Esq., Akerman Senterfitt, 1 S.E. 3rd Ave., 25th Floor, Miami, FL 33131.

## *Prospective Compliance with Law*

8.  Star One agrees to comply with all provisions of New York Labor Law Articles 6 and 9 and 12 N.Y.C.R.R. Parts 137 and 195, in the operation of their business. Such compliance shall mean, without limitation, that Star One will make no deductions from its employees' wages or charge its employees by separate transaction for housing, food, and/or transportation costs, except where authorized by New York law; that any non-exempt employee who works more

than forty hours in a week will receive overtime pay at one and one half times his or her regular rate of pay; that Star One will pay its employees weekly; and that Star One will pay its employees their full, lawful earned wages for all hours worked, including any "training.".

9.   Star One shall not in any manner discriminate against any of the employees who cooperated or are perceived to have cooperated with the Attorney General's Investigation because of such cooperation or perceived cooperation.  Conduct amounting to such discrimination shall include but not be limited to:

   a.   Treatment, harassment, and/or other action with the purpose and/or effect of making any employee who cooperated or is perceived to have cooperated with the Attorney General and/or who collects a portion of the Settlement Fund under this Assurance be discharged, constructively discharged, retaliated against, not be employed, not be re-hired, or be in any other way penalized or discriminated against in the terms and/or conditions of his/her employment.

   b.   Communication with recruiters, prospective employers, employers, and/or government entities and/or any other action with the purpose and/or effect of impacting and/or harming any employee who cooperated or is perceived to have cooperated with the Attorney General or who collects a portion of the Settlement Fund under this Assurance, except as required by law.  This includes but is not limited to such communication and/or any other action concerning (i) such employees' employment authorization under the H-2B visa program and/or any other type of immigrant or non-immigrant

8

employment authorization, and/or (ii) such employees' immigration status; however, a truthful response to any inquiry by a governmental agency shall not constitute a violation of this Assurance; and,

10.    If Star One, including all principals, agents, representatives, successors in interest, substantially owned affiliated entities, assigns, and legal representatives thereof, is contacted by a prospective employer or employer of any employee who cooperated or is perceived to have cooperated with the Attorney General and/or who collects a portion of the Settlement Fund under this Assurance, Star One, including all principals, agents, representatives, successors in interest, substantially owned affiliated entities, assigns, and legal representatives thereof, will only confirm the dates of employment and position of such employees, except as required by law.

### *Monitoring*

11.    Star One agrees that their prospective compliance with the New York Labor Law and regulations thereunder shall be monitored as follows:

On January 10, 2009 and January 10, 2010, Star One will provide the Attorney General with (1) a complete set of time records and payroll records for all persons employed by Star One in New York State, and (2) documents related to H-2B visas (including but not limited to Applications for Alien Employment Certification known as ETA 750s and I-129 Petitions for A Nonimmigrant Worker) for all persons hired and/or employed by Star One in New York State during the period beginning upon the full execution of this Assurance through January 10, 2010, pursuant to subpoenas to be issued by certified mail or fax by

the Attorney General to Star One Staffing, Inc. and Star One Staffing

International, Inc., attention Mary Jane Hague, 2414 Coral Way in Miami,

Florida 33145, fax (305) 856-2241. Such records shall be sent by certified mail,

overnight delivery, or hand-delivery to the attention of Assistant Attorney

General C. Michael Higgins, Office of the New York State Attorney General,

120 Broadway, 26th Floor – Labor Bureau, New York, NY 10271.

12.    Star One agrees to notify the Attorney General, in writing and by certified mail,

if they change their attorney, or if there is any change of address or other contact

information. Notice shall be sent within ten (10) business days of the event

prompting such notification, by certified mail, overnight delivery, or hand-

delivery to the attention of Assistant Attorney General C. Michael Higgins,

Office of the New York State Attorney General, 120 Broadway, 26th Floor –

Labor Bureau, New York, NY 10271.

### *Miscellaneous*

13.    This Assurance is final and binding on Star One Staffing, Inc., Star One Staffing

International, Inc., their officers, directors, and owners including, but not limited

to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth

Carruthers, and all principals, agents, representatives, successors in interest,

substantially owned affiliated entities, assigns, and legal representatives thereof.

Star One has a duty to inform any such successor in interest or substantially-

owned affiliated entity of this Assurance and its terms.

14.    In the event that Star One Staffing, Inc., Star One Staffing International, Inc.,

their officers, directors, and owners including, but not limited to Roberto

Villanueva, Mary Jane Hague, John C. Carruthers, and/or Ruth Carruthers fail to comply with any of the material terms of this Assurance, and fail to cure such alleged non-compliance upon fifteen (15) days written notice to Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and/or Ruth Carruthers via certified mail to their attorney, Susan N. Eisenberg, Esq., Akerman Senterfitt, 1 S.E. 3rd Ave., 25th Floor, Miami, FL 33131, informing her of the non-compliance, the Attorney General reserves the right to bring enforcement proceedings regarding violation of the Wage and Hour Laws, as found in the Investigation. This Assurance is governed by all applicable law, including but not limited to New York Executive Law § 63(15).

15.    Star One agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Assurance or creating the impression that this Assurance is without factual basis. Nothing in this paragraph affects Star One Staffing, Inc.'s, Star One Staffing International, Inc.'s, their officers', directors', and owners' including, but not limited to Roberto Villanueva's, Mary Jane Hague's, John C. Carruthers', and/or Ruth Carruthers': (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the Attorney General is not a party.

16.    In the event that any court or administrative agency shall determine that any provision of this Assurance is unenforceable, such provision shall be severed from this Assurance and all other provisions shall remain valid and enforceable,

11

provided, however, that if the severance of any such provision shall materially alter the rights or obligations of the parties hereunder, they shall, through reasonable, good faith negotiations, agree upon such other amendments hereto as may be necessary to restore the parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

17. This Assurance constitutes the entire agreement among the parties, and no representations, warranties, or inducements have been made by any party hereto concerning this Assurance and its exhibits other than those contained and memorialized in such documents.

18. Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth Carruthers acknowledge that they have been represented at all times during the settlement negotiations by Susan N. Eisenberg, Esq., Akerman Senterfitt, 1 S.E. 3rd Ave., 25th Floor, Miami, FL 33131, and that they have reviewed this Assurance with their counsel, Susan N. Eisenberg, Esq., prior to execution of the Assurance, and have been advised of their right to consult with other independent counsel of their choosing.

19. This Assurance may be signed in counterparts but collectively shall constitute a single agreement.

20. This Assurance, consisting of fourteen (14) pages and jurat pages and exhibits thereto, constitutes the entire agreement between Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers,

and Ruth Carruthers and the Attorney General. This Assurance cannot be modified other than in writing signed by all parties.

AND FURTHER, the Attorney General accepts this Assurance pursuant to Section 63, Subdivision 15 of the Executive Law in lieu of commencing a judicial proceeding pursuant to Executive Law Section 63, Subdivision 12 and in settlement of all claims that may be raised by the Attorney General against Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth Carruthers concerning the violation of the Wage and Hour Laws, on behalf of any Star One Employee who worked for Star One Staffing, Inc., Star One Staffing International, Inc., their officers, directors, and owners including, but not limited to Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and Ruth Carruthers during the Covered Period. In the event that Star One Staffing, Inc., Star One Staffing International, Inc., Roberto Villanueva, Mary Jane Hague, John C. Carruthers, and/or Ruth Carruthers fail to comply with the terms of this Assurance, the Attorney General reserves the right to bring enforcement proceedings regarding the above matter.

AND FURTHER, upon sigining of this Assurance, the Attorney General agrees it has not and will not criminally prosecute any of the named individuals or corporate defendants for conduct that is the subject matter of this Assurance, specifically, failure to pay wages or overtime, deductions from wages, failure to make timely wage payments during the Covered Period.

[The remainder of this page intentionally left blank]

Dated _____, 2008      Dated _____, 2008

By: _____

Mary Jane Hague, Individually and as
authorized corporate representative of Star
One Staffing, Inc. and Star One Staffing
International, Inc.

By: _____

Roberto Villanueva, Individually and as
authorized corporate representative of Star
One Staffing International, Inc.

By: _____

John C. Carruthers, Individually and as
authorized corporate representative of Star
One Staffing International, Inc.

By: _____

Ruth Carruthers, Individually and as
authorized corporate representative of Star
One Staffing, Inc

Andrew M. Cuomo
Attorney General of the State of New York

Seth Kupferberg
Acting Assistant Attorney
General in Charge Of the
Labor Bureau (212) 416-
8694 (fax)

By: _____

C. Michael Higgins
Assistant Attorney General
Labor Bureau
120 Broadway, 26th Floor
New York, NY 10271
(212) 416-8713 / (212) 416-8700

14

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| **PEOPLE OF THE STATE OF NEW YORK,** by **ANDREW M. CUOMO,** Attorney General of the State of New York, | |
| Petitioner, | **VERIFIED PETITION** |
| -against- | **Index No.** |
| **STAR ONE STAFFING, INC.; STAR ONE STAFFING INTERNATIONAL, INC.; ROBERTO (BOBBY) VILLANUEVA; MARY JANE HAGUE,** | |
| Respondents. | |

Petitioner, the People of the State of New York, by their attorney, ANDREW M.

CUOMO, Attorney General of the State of New York, as and for their Petition, respectfully

alleges:

## PRELIMINARY STATEMENT

1.     Petitioner brings this special proceeding pursuant to Executive Law § 63(12) for

injunctive relief, an accounting, restitution, and damages against Respondents for repeated and

persistent illegality by: (1) making prohibited deductions from wages of guestworkers from the

Philippines who were employed by Star One Staffing, Inc. and Star One Staffing International,

Inc.[1] to work at country clubs and other food and beverage services industry establishments in

New York ("Employees"), in violation of Labor Law § 193; (2) failing to pay Employees any

wages for some hours worked, in violation of Labor Law §§ 191, 193, and 198; (3) failing to pay

---

[1] Star One Staffing, Inc. and Star One Staffing International, Inc. are hereinafter
collectively referred to as "Star One."

Page 1 of 15

Employees overtime at the required rate, in violation of Labor Law § 652 and 12 N.Y.C.R.R. § 137-1.3; and (4) failing to pay Employees their earned wages within the time limits set by Labor Law § 191. The Petitioner seeks relief from April 2002 until the present.

## PARTIES

2.      Petitioner, Andrew Cuomo, the Attorney General of the State of New York, on behalf of the People of the State of New York, may seek to enjoin the continuance of repeated or persistent illegality in the transaction of business in the State of New York, may seek an accounting of the business practices in question during the limitations period, and may recover restitution and damages for all victims, in accordance with Executive Law § 63(12). The Attorney General has a principal office in New York County, New York.

3.      Respondents Star One Staffing, Inc. and Star One Staffing International, Inc., are active foreign business corporations that are registered with the New York Secretary of State to do business in the State of New York. Star One is a staffing agency that employs seasonal workers, including guestworkers from the Philippines who are authorized to work temporarily in the U.S. pursuant to H-2B visas. Star One provides its employees to country clubs and other food and beverage services industry establishments in New York.

4.      Star One has conducted its business in New York from four residences in Nassau County located at 54 Coolidge Avenue in Roslyn Heights, New York, 41 Harding Avenue in Roslyn Heights, New York, 1026 Glen Cove Avenue in Glen Head, New York, and 600 Cedar Swamp Road in Glen Head, New York for varying periods of time since at least on or about August of 2007 until at least on or about November 30, 2007.

5.      Respondent Roberto (Bobby) Villanueva is a vice president, manager/supervisor,

recruiter, and/or agent of Star One.  Respondent Villanueva is sued in his individual capacity

pursuant to Executive Law § 63(12).

      6.      Respondent Mary Jane Hague is the President, Treasurer, and a Director of Star

One Staffing, Inc.  She is also the President and a Director of Star One Staffing International, Inc.

Respondent Hague is sued in her individual capacity pursuant to Executive Law § 63(12).

## RELEVANT STATUTORY PROVISIONS

      7.      Executive Law § 63(12) provides that "[w]henever any person shall engage in

repeated . . . illegal acts or otherwise demonstrate persistent . . . illegality in the carrying on,

conducting or transaction of business, the attorney general may apply, in the name of the people

of the State of New York, to the supreme court of the State of New York . . . for an order

enjoining the continuance of such business activity or of any . . . illegal acts, directing restitution

and damages."

      8.      Labor Law § 193(1) provides:

  No employer shall make any deductions from the wages of an employee, except
deductions which:

      (a) are made in accordance with the provisions of any law or any rule or
      regulations issued by any government agency; or

      (b) are expressly authorized in writing by the employee and are for the benefit of
      the employee; provided that such authorization is kept on file on the employer's
      premises.  Such authorized deductions shall be limited to payments for insurance
      premiums, pension or health and welfare benefits, contributions to charitable
      organizations, payments for United States bonds, payments for dues and
      assessments to a labor organization, and similar payments for the benefit of the
      employee.

      9.      Failure to pay promised wages is illegal under Article 6 of the Labor Law.  Labor

Law § 191 requires that promised wages must be paid on time, with the required frequency as

determined by the classifications set forth in the statute. Labor Law § 193 specifies the

deductions that may be made from wages, and Labor Law § 190(1) defines "wages" for the

purposes of Article 6 as including all earnings of an employee for labor or services rendered,

regardless of the basis for determining the amount of the wages. Under Labor Law § 198(3),

"[a]ll employees shall have the right to recover full wages, benefits and wage supplements

accrued during the six years previous." In addition, Labor Law § 663, which provides for the

amount of recovery in overtime cases, necessarily includes the promised wage as a basis for

computing the "one and one-half times the regular rate of pay" that is due when a covered

employee works more than 40 hours in a workweek. See Labor Law § 652; 12 N.Y.C.R.R. §

137-1.3.

      10.     The Minimum Wage Act, Article 19 of the Labor Law allows the Commissioner

of Labor to issue wage orders modifying minimum wages in certain industries. See Labor Law §

652. Part 137 of the Codes, Rules, and Regulations of the State of New York contains the

minimum wage order for the restaurant industry. 12 N.Y.C.R.R. § 137-1.3 provides for overtime

wages of one and one-half times an employee's regular hourly rate of pay for hours worked in

excess of forty hours in one workweek.

      11.     Labor Law § 191(1)(a) requires an employer to pay manual workers "weekly and

not later than seven calendar days after the end of the week in which the wages are earned."

      12.     Labor Law §§ 198 and 663 provide for liquidated damages in the amount of

twenty-five percent of the underpayments when an employer willfully underpays wages.

      13.     For the purposes of Article 6 of the Labor Law, which includes the limitations on

deductions from pay, the requirement to pay promised wages for work that has been done, and

the time limits for paying wages, the term "employer" means "any person, corporation, or association employing any individual in any occupation, industry, trade, business or service," with an exception that is not relevant here, and the term "employee" means "any person employed for hire by an employer in any employment." Labor Law §§ 190(2) and (3).

14.    For the purposes of Article 19 of the Labor Law, the Minimum Wage Act, which is the basis for the regulation requiring overtime payments, the term "employer" means "any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons acting as employer," and the term "employee" means "any individual employed or permitted to work by an employer in any occupation," with specified exceptions not relevant here. Labor Law § 651(5) and (6).

15.    The general definitions section of the Labor Law further defines "employed," for the purposes of all of the articles within the Labor Law, including but not limited to Articles 6 and 19, as being "permitted or suffered to work." Labor Law § 2(7).

16.    Labor Law §§ 198 and 663 set a limitations period of six years for claims of illegal deductions from wages, failure to pay promised wages, failure to pay required overtime, and failure to pay within the time limits set by law.

17.    CPLR §§ 5001 and 5004 provide for prejudgment interest at a rate of nine percent per annum.

18.    CPLR § 8303(a)(6) provides that, in addition to costs, a court may award an allowance to the Attorney General of up to $2,000.00 against each respondent if the Attorney General prevails in a proceeding brought under (among other provisions) Executive Law § 63(12).

19.     The H-2B program is authorized under the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1184(c)(1). The H-2B program permits employers to employ individuals to work in the United States on a temporary basis. See 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Such temporary employees are referred to as "nonimmigrant aliens" under federal immigration law, see 8 U.S.C. § 1101(a)(15), and also referred to in lay terms as guestworkers. Regulations issued by U.S. Citizenship and Immigration Service ("USCIS"), see 8 C.F.R. § 214.2, and the U.S. Department of Labor ("USDOL"), see 20 C.F.R. Part 655, govern the labor certification process with which employers must comply in order to obtain an H-2B visa. See 8 C.F.R. § 214.2(h)(1)(D); 20 C.F.R. §§ 655.0 to 655.4. Employers seeking to hire employees on an H-2B visa must first submit an application for temporary labor certification, known as an Application for Alien Employment Certification (referred to as an "ETA 750"), to the state workforce agency and the USDOL for approval. Id. In such applications employers certify under penalty of perjury that, inter alia, "The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law." If an ETA 750 is certified by the USDOL, then the employer must submit a petition for an H-2B visa to USCIS for approval. See 8 C.F.R. § 214.2(h)(6).

## FACTS

20.     Star One recruits and employs Filipino individuals to work in New York, among other states, pursuant to H-2B visas as guestworkers performing food and beverage services at various country clubs and other establishments in the food and beverage services industry.

21.     In 2006 and 2007, Star One Staffing, Inc. submitted ETA 750 applications to the New York State Department of Labor ("NYSDOL"), the designated state workforce agency in

New York, and the U.S. Department of Labor to employ a total of at least 154 H-2B

guestworkers to work as waiters/waitresses in Nassau and Suffolk counties in New York.

Specifically, the USDOL certified five (5) ETA 750 applications submitted by Star One Staffing,

Inc. to employ: (1) 33 waiters/waitresses to work from May 1, 2007 to January 30, 2008 at Glen

Head Country Club, Inc., located at 240 Glen Cove Road, Glen Head, New York 11545; (2) 31

waiters/waitresses to work from August 10, 2006 to January 30, 2007 at Glen Head Country

Club, Inc.; (3) 45 waiters/waitresses to work from June 7, 2007 to December 30, 2007 at

Thatched Cottage At the Bay, located at 441 E. Main Street, Centerport, New York 11721; (4) 25

waiters/waitresses to work from April 1, 2007 to January 30, 2008 at Muttontown Country Club,

located at 5931 Northern Blvd., East Norwich, New York 11732; and, (5) 20 waiters/waitresses

to work from August 26, 2006 to January 30, 2007 at Muttontown Country Club.  Respondent

Mary Jane Hague, President of Star One Staffing, Inc., signed four (4) of these ETA 750s.

      22.     All five (5) of these ETA 750s included a certification by Star One Staffing, Inc.

under penalty of perjury that "the job opportunity's terms, conditions and occupational

environment are not contrary to Federal, State or local law."

      23.     In 2007, USCIS approved at least six (6) H-2B visa petitions submitted by Star

One Staffing, Inc. to employ workers in New York ("2007 Star One H-2B Petitions").  These

2007 Star One H-2B Petitions authorized Star One Staffing, Inc. to employ ninety (90) aliens to

work full-time in New York at either Glen Head Country Club, Thatched Cottage At the Bay, or

Muttontown Country Club.  Respondent Mary Jane Hague signed four (4) of these 2007 Star One

H-2B Petitions.

      24.     Between April and August of 2007, Respondent Roberto ("Bobby") Villanueva

and other Star One representatives recruited Filipino H-2B workers who were then working for other employers in Orlando, Florida, to work for Star One in New York providing food and beverage services at country clubs and other food and beverage services industry establishments. During this time period, Star One representatives, including Mr. Villanueva, held a number of recruitment meetings in Orlando, Florida with such H-2B workers where they were promised that they would get at least 40 hours of work each week and wage rates of $10.00 per hour if they worked for Star One in New York.  Star One representatives, including Mr. Villanueva, also promised that employees would be paid for training in New York.

25.     Between April and August 2007, at least ten (10) H-2B workers who had been working in Orlando ("the Star One Complainants"[2]) agreed to work for Star One in New York under H-2B visa(s).

26.     None of the Star One Complainants signed any documents authorizing Star One to make any deductions from their wages for housing, food, or transportation.

27.     In or about late August and early September 2007, the Star One Complainants were transported by Mr. Villanueva and Star One from Florida to Long Island, New York.

28.     The Star One Complainants joined other food and beverage workers in New York who were already employed by Star One.  Additional Star One employees arrived after the Star One Complainants began working for Star One.

29.     Star One housed its employees, including the Star One Complainants other wait staff, drivers, and supervisors, in four overcrowded staff houses in Nassau County, New York.

---

[2] These ten individuals, the Star One Complainants, are ██████████████████████

30.    Star One transported its employees, including the Star One Complainants, to and from the four (4) Star One staff houses and the country clubs and other food and beverage services industry establishments in New York where they worked.

31.    The Star One Complainants' job duties included serving food and drinks, taking orders, and setting, bussing, and clearing tables at the country clubs and banquet/catering hall.

32.    The Star One Complainants worked up to sixty (60) hours a week and up to six (6) days a week at the various country clubs and/or the banquet/catering hall in New York.  But the Star One Complainants' work schedules were irregular and the number of days they worked each week varied from as many as six (6) to as few as zero (0).

33.    The Star One Complainants worked for entire weeks and months until they got paid any wages.  Although Star One gave seven (7) of the Star One Complainants cash advances before they were paid wages, even the cash advances were generally not paid until at least several weeks or even a month after they began working for Star One.

34.    When Star One finally paid the Star One Complainants, they received little in net wages because of the large amount of money that Star One deducted from their gross wages for housing, food, and transportation.

35.    When the Star One Complainants were paid, Star One deducted the following amounts from their wages:

    a.    $100.00 per week for housing;

    b.    $60.00 per week for transportation; and

    c.    $40.00 per week for food.

These deductions for housing, transportation, and food violated Labor Law § 193.

36.     For between two to four of their initial shifts, the Star One Complainants trained at Thatched Cottage At the Bay.  This work included observing other food and beverage service workers doing their jobs, as well as serving food and beverages and performing other related tasks.  The Star One Complainants were not paid for these initial two to four shifts that they worked at Thatched Cottage At the Bay, in violation of Labor Law §§ 191, 193, 198, and 663.

37.     Star One did not pay some of the Star One Complainants for other hours that they worked, also in violation of Labor Law §§ 191, 193, 198, and 663.

38.     When the Star One Complainants worked more than 40 hours in a workweek for Star One, they were not paid one and one-half times their regular hourly rate of pay for those hours, in violation of  Labor Law §§ 652 and 663 and 12 N.Y.C.R.R. § 137-1.3.

39.     Two (2) of the Star One Complainants, ██████ and ██████ received only two pay slips from Star One, one in November and the other in December of 2007.  The eight (8) other Star One Complainants received only three pay slips from Star One, once in October, November, and December of 2007.  Therefore, Star One did not pay the Star One Complainants weekly, and the Respondents violated Labor Law § 191 when Star One paid the workers later than seven (7) calendar days after the end of the week in which the wages were earned.

40.     Respondent Roberto (Bobby) Villanueva had actual knowledge of the illegality alleged above and personally participated in those illegalities.  Therefore, he is personally liable for the illegalities in accordance with Executive Law § 63(12).

41.     Mr. Villanueva recruited food and beverage workers to work for Star One in New York; made promises to the potential workers about wages, hours, and living conditions; informed Star One employees about the deductions that would be and were made from their

Page 10 of  15

wages, provided reasons for those deductions, and distributed to the employees documents

addressing earnings and deductions; told Star One employees how frequently they would be paid;

assigned workers to work at particular locations and/or set their schedules; drove Star One

workers to their workplaces; handed pay slips to employees; and handled complaints from the

employees about their wages, including deductions and late payments, among other complaints.

42.    Respondent Mary Jane Hague had actual knowledge of the illegality alleged above

and personally participated in that illegality.  Therefore, she is personally liable for the illegalities

in accordance with Executive Law § 63(12).

43.    As President, Treasurer, and a Director of Star One Staffing, Inc., and as the

President and a Director of Star One Staffing International, Inc., Ms. Hague exercised control

over Star One's policies concerning the payment of wages and deductions from wages.

44.    Ms. Hague signed four (4) ETA 750 applications submitted by Star One Staffing,

Inc. to the NYSDOL and that were certified by the USDOL, to employ a total of 123 H-2B

workers/waitresses at three (3) food and beverage services establishments in New York; signed

four (4) H-2B visa petitions that Star One Staffing, Inc. submitted to and that were approved by

USCIS giving Star One Staffing, Inc. permission to employ ninety (90) H-2B workers as full-

time waiters at several food and beverage services establishments in New York; and, signed

memoranda and/or written communications to Star One employees regarding wage rates, the

$800 per month deductions from wages for housing, food, and transportation costs, and other

personnel issues, and was listed as a person to contact if employees had any questions about their

earnings.

45.    Respondents knew or should have known that their conduct violated the

deductions, promised wages, overtime, and prompt payment provisions of the Labor Law and the

regulations thereunder.

46.    Star One and Mr. Villanueva knew about the number of hours that the workers worked because they set their schedules.  Star One and Mr. Villanueva knew when the workers were paid, how much they were paid, and what deductions were made from their wages because, between September and November, 2007, Mr. Villanueva handed out pay slips, received complaints about wages and deductions from the workers, and responded to those complaints. Star One and Mary Jane Hague knew about the illegal deductions because they set the policy for how much would be taken in deductions from the workers' pay, as reflected in the October 12, 2007 memorandum signed by Ms. Hague and described above.

### AS AND FOR A FIRST CAUSE OF ACTION:
### ILLEGAL DEDUCTIONS

47.    Petitioner realleges and incorporates paragraphs 3-46 as fully stated herein.

48.    Respondents willfully violated Labor Law § 193.  During the limitations period of six years, Respondents made illegal deductions from wages that Star One employees earned. These illegal deductions were made for such items as housing, transportation, and food.

49.    By repeatedly and persistently violating Labor Law § 193, Respondents violated Executive Law § 63(12).

### AS AND FOR A SECOND CAUSE OF ACTION:
### FAILURE TO PAY PROMISED WAGES

50.    Petitioner realleges and incorporates paragraphs 3-49 as fully stated herein.

51.    Respondents willfully violated Labor Law §§ 193, 191, 198(3), and 663 by failing to pay Star One employees the wages that were promised to them for work that they had done. Star One employees were not paid for hours that they were training and for other hours that they worked.

52.    By repeatedly and persistently violating Labor Law §§ 193, 191, 198(3), and 663 Respondents violated Executive Law § 63(12).

## AS AND FOR A THIRD CAUSE OF ACTION:
## FAILURE TO PAY REQUIRED OVERTIME

53.    Petitioner realleges and incorporates paragraphs 3-52 as fully stated herein.

54.    Respondents willfully violated Labor Law § 652 and 12 N.Y.C.R.R. § 137-1.3 by failing to pay Star One employees one and one-half times their regular hourly rates of pay for hours that they worked in excess of 40 in a workweek.

55.    By repeatedly and persistently violating Labor Law §§ 652 and 663 and 12 NYCRR § 137-1.3, Respondents violated Executive Law § 63(12).

## AS AND FOR A FOURTH CAUSE OF ACTION:
## FAILURE TO PAY ON A TIMELY BASIS

56.    Petitioner realleges and incorporates paragraphs 3-54 as fully stated herein.

57.    Respondents willfully violated Labor Law §191(1)(a) by failing to pay Star One employees weekly and not later than seven calendar days after the end of the week in which the wages were earned.

58.    By repeatedly and persistently violating Labor Law § 191(1)(a), Respondents violated Executive Law § 63(12).


WHEREFORE, Petitioner requests that this court grant relief pursuant to Executive Law § 63(12), Labor Law §§ 191, 193, 198, 652, and 663, and 12 NYCRR § 137-1.3, against Respondents by issuing an order and judgment:

1.    Permanently enjoining Respondents, their agents, representatives, employees, successors and assigns and any corporation or other entity in which they are a principal owner,

officer or manager from violating Executive Law § 63(12), Labor Law §§ 191, 193, 198, 652, and 663, and 12 NYCRR § 137-1.3, and from engaging in the illegal practices alleged herein;

2.        Permanently enjoining Respondents, their agents, representatives, employees, successors and assigns and any corporation or other entity in which they are a principal owner, officer or manager, from either employing or providing workers to other employers in the State of New York until a $200,000.00 performance bond is filed with the Attorney General by a surety or bonding company licensed by and in good standing with the New York State Department of Insurance, guaranteeing that Respondents comply with any injunction which may be entered herein, with the proceeds of that bond providing a fund for restitution, civil penalties and costs should employees be damaged by the future conduct of Respondents;

3.        Directing Respondents to provide a full accounting vis-a-vis each Star One employee who worked in New York from April 2002 to the present, including the dates of each employee's employment, including the starting date and ending date, if any, and the hours and dates that each employee worked; each employee's rate(s) of pay, including explanations for why each change in an employee's wage rate was made; the amount of each deduction taken from each employee's earnings, and the date of and reason for each deduction; and the dates of each payment to each employee.

4.        Directing Respondents to make full monetary restitution for illegal deductions from wages, failure to pay promised wages, and failure to pay overtime, including twenty-five percent liquidated damages and prejudgment interest at the rate of nine percent per annum, since April 2002, including but not limited to the monetary relief due to the ten (10) Star One Complainants: $19,316.29 in wage underpayments, plus $4,829.07 in liquidated damages, plus prejudgment interest at the rate of nine percent per annum.

5.    Awarding Petitioner costs and an additional allowance in the amount of $2,000.00

against each Respondent pursuant to CPLR § 8303(a)(6);

6.    Assessing joint and several liability of each Respondent for all restitution,

liquidated damages, costs, allowances, and interest owed from April 2002 to the present;

7.    Authorizing Petitioner to docket as a money judgment any order issued by the

Court in this proceeding directing the payment of money by Respondents pursuant to CPLR §

2222; and

8.    Granting Petitioner such other and further relief as this Court finds just and

proper.

Dated: New York,  New York
   April _____, 2008

      Respectfully submitted:

      ANDREW M. CUOMO
      Attorney General of the State of New York
      Attorney for Petitioner

      Jennifer S. Brand
      Assistant Attorney General
       In Charge of the Labor Bureau

      C. Michael Higgins
      Judith Marblestone
      Assistant Attorneys General
       of Counsel

      BY:   _____
         C. MICHAEL HIGGINS
         Assistant Attorney General

      Office of the Attorney General
      120 Broadway, 26th Floor
      New York, New York 10271-0332
      (212) 416-8713

# ARTICLE 2
# RULES OF THE INDUSTRIAL COMMISSIONER

### PART 480 - REMUNERATION

*(Statutory authority: Labor Law § 517, 530; Article 18)*

Section 480.1    Value of board and lodging

Section 480.2    Tips of beauty parlor operators

Section 480.3    Tips of garage, gas station and parking lot attendants

Section 480.4    Tips of service employees in restaurants

Section 480.5    Tips of dining room employees in American Plan hotels and in eating clubs

Section 480.6    Tips of hotel service employees

Section 480.7    Tips of taxicab drivers

Section 480.8    Tips of employees in barber shops

Section 480.9    Tips of baggage porters in bus and airline terminals

Section 480.10    Tips of pinboys at bowling alleys

Section 480.11    Tips for checkroom attendants

Section 480.12    Tips of maritime service employees

***§480.1 Value of board and lodging.***

Section 517 of the Unemployment Insurance Law provides that the reasonable money value of board, rent, housing, lodging or similar advantage furnished by employers to their employees constitutes remuneration.

In the absence of evidence furnished to the commissioner pursuant to subdivisions (c) and (d) of this section, the reasonable money value of board and lodgings shall be the greater of:

> each meal
> $1.15
> lodging, per night                          $1.85

> the money value used by an employer for compliance with New York Minimum Wage Orders (12 NYCRR Chapter II, Subchapters B and F).

A lower money value may be used if an employer shows to the commissioner's satisfaction that the values prescribed in subdivision (b) of this section are in excess of the actual value.

A higher money value may be used if an employee shows to the commissioner's satisfaction that the values prescribed in subdivision (b) of this section are less than the actual value.

> *Historical note: Section repealed, new filed February 1, 1984 effective April 1, 1984.*

### §480.2 Tips of beauty parlor operators.

For the purposes of this section, the term beauty parlor operator includes all employees of any employer performing personal service on female customers in operations useful to the care, cleansing, or beautification of the hair, nails or skin, or in the enhancement of personal appearance and in operations incidental thereto; but it excludes maids, receptionists, physical training instructors, nurses, desk clerks, office workers and other employees not performing the aforementioned operations.

No value of gratuities or tips need be included in the amount of remuneration as defined in section 517 of the Unemployment Insurance Law if in a given beauty shop:

> acceptance of tips or gratuities is not allowed;