## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

**MORENA ROCO, ERICZON MACARAYAN,
FRANCISCO ABSIN, LEONOR LACSINA,
and ROGELIO RINGOR, EACH                                    PLAINTIFFS
INDIVIDUALLY AND ON BEHALF OF
OTHERS SIMILARLY SITUATED**

**vs.**                              **Case No. 4:10-CV-30**

**STAR ONE STAFFING INTERNATIONAL, INC.
STAR ONE STAFFING, INC., MARY JANE HAGUE,
JOHN C. CARRUTHERS, and RUTH CARRUTHERS        DEFENDANTS**

**Response to Defendants' Motion to Dismiss Plaintiffs' Claims Under the
*Racketeer Influenced and Corrupt Organizations Act,*
18 U.S.C. §1962(c) and 18 U.S.C. §1962(d)**

COME now the Plaintiffs Morena Roco, Ericzon Macarayan, Francisco Absin,

Leonor Lacsina, and Rogelio Ringor, each individually and on behalf of others

similarly situated, by and through their attorneys of Holleman & Associate, P. A., and

Sanford Law Firm, PLLC, and for their *Response to Defendants' Motion to Dismiss*

*Plaintiffs' Claims Under the Racketeer Influenced and Corrupt Organizations Act, 18*

*U.S.C. §1962(c) and 18 U.S.C. §1962(d)*, do state and allege as follows:

### PROCEDURAL HISTORY

On January 19, 2010, the Plaintiffs filed their complaint alleging numerous

causes of actions including, but not limited to, the following predicate causes of action

pursuant to the *Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C.

§1962(c) and 18 U.S.C. §1962(d):

    a.      Immigration document fraud in violation of 18 U.S.C. § 1546 (relating to fraud and the misuse of visas, permits and other documents);[1]

    b.      interstate and foreign travel to further its unlawful scheme in violation of 18 U.S.C. § 1952;

    c.      mail fraud to further its unlawful scheme in violation of 18 U.S.C. § 1341; and

    d.      wire fraud to further its unlawful scheme in violation of 18 U.S.C. § 1343.

## <u>STANDARD OF REVIEW</u>

When ruling on a motion to dismiss, the Court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the non-moving party.[2]  The Defendants are correct in their assertion that a complaint "must contain facts sufficient to state a claim as a matter of law and that it must not merely be conclusory in its allegations,"[3] but the Eighth Circuit, citing the United States Supreme Court, has also clearly held that dismissal is inappropriate and that a complaint <u>shall not</u> be dismissed for failure to state a claim upon which relief can be granted "unless it appears **beyond doubt** that the Plaintiff

---

[1] *See also* 8 C.F.R. §214.2(h)(6)(B)(vi)

[2] *Hafley v. Lommen*, 90 F.3d 264, 266 (8th Cir. 1996).

[3] *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F. 3d649, 651 (8th Cir. 1998).

can prove **no set of facts** in support of his claim which would entitle him to relief."[4]

## ARGUMENT

### I. THE NECESSARY ELEMENTS FOR A CLAIM FOR VIOLATION OF 18 U.S.C. §1962(C) *RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT*

The *Racketeer Influenced and Corrupt Organizations Act* ("RICO") creates a civil cause of action for "any person injured in his business or property by reason of a violation of 18 U.S.C. §1962."[5] In order to maintain a cause of action for a violation of 18 U.S.C. §1962(c) ("§1962(c)"), the Plaintiffs must show that the conduct of an enterprise through a pattern of racketeering injured in their business or property by reason of a violation of §1962.

#### A. ENTERPRISE

An enterprise is not the pattern of racketeering activity, but an entity separate and apart from the pattern of activity in which it engages.[6] Therefore, the "existence of an enterprise at all times remains a separate element for the Plaintiffs which must be proved by the Plaintiffs."[7] The United States Supreme Court has determined that RICO enterprises all have the same three characteristics: (1) Common or shared

---

[4] *Breedlove v. Earthgrains Baking*, 140 F 3d. 797, 799 (8th Cir. 1998)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

[5] 18 U.S.C. §1962(c)

[6] *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Hadeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997).

[7] *Id.*

purpose; (2) continuity of structure and personnel; and (3) an ascertainable structure.

### 1.  Common or Shared Purpose and 2.Continuity of Structure and Personnel

Since the "common or shared purpose" prong seems self-explanatory, a discussion of same will be omitted to save both the Court's time and the time of all parties herein.

"Continuity of structure" exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing basis."[8]  Both the structure and the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise.[9]

### 3.    Ascertainable Structure

In assessing whether an enterprise has an "ascertainable structure distinct from that inherent in a pattern of racketeering, it is the Court's common practice to determine if the enterprise would still exist if the predicate acts were removed from the equation," because an entity and/or enterprise is likely to be clearly distinct from the acts of racketeering when separated from the pattern of racketeering.[10]

### B.    CONDUCT

---

[8]  *Hadeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997); *see also United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987).

[9]  *Id.*

[10]  *Id.*

In *Reves v. Ernst & Young*, the Supreme Court interpreted the conduct requirement to authorize recovery against only individuals who participate in the operation or management of the enterprise itself.[11]  They have further clarified the scope of this "operation or management test" stating:

> An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it.[12]

Moreover, individuals "outside" of the enterprise may be liable under §1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs.[13] It is not necessary for a RICO defendant to have wielded control over the enterprise, but the Plaintiff must prove that the Defendant played some part in the direction of the enterprise's affairs.[14]

The Eighth Circuit commented on this holding, stating, "In our view, the *Reves* decision represents a fairly uncomplicated application of the operation or management test.  This test...is built upon the recognition that Congress did not mean for §1962(c) to penalize all who are employed by or associated with a RICO enterprise, but only

---

[11]  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

[12]  *Hadeen*, 112 F.3d 1339, 1347 (8th Cir. 1997)(citing *Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir.)(en banc)(announcing the "operation or management" test), cert. denied, 464 U.S. 1008 (1983).

[13]  *Hadeen*, 112 F.3d 1339, 1347 (8th Cir. 1997) (*citing Reves*, supra note 11 at 184-85).

[14]  *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995).

those who, by virtue of their association or employment, play a part in directing the enterprise's affairs."[15]  The Court concluded, "the polestar is the activity in question, not the defendant's status."[16]

### C.    PATTERN OF RACKETEERING ACTIVITY

A pattern of racketeering activity is present only when predicate acts are linked by "continuity plus relationship."[17]  Prohibited activities are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.[18]  The determination of a pattern of racketeering activity is a factual one.[19] This prong of "enterprise" receives the most discussion because their allegations of "mail" and "wire fraud," and an analysis of any deficiencies therein would fall under this prong.

The Defendants argue that the RICO violation allegations contained in the Plaintiffs' complaint, which are listed above, fail to meet the specificity requirements of Rule 9(b) of the *Federal Rules of Civil Procedure* and fail to satisfy the necessary

---

[15]   *Hadeen*, 112 F.3d 1339, 1347 (8th Cir. 1997).

[16]   *Id.*

[17]   *Hadeen*, 112 F.3d 1339, 1347 (8th Cir. 1997)(*citing H.J., Inc. V. Northwestern Bell Tel. Co.,* 429 U.S. 229, 239 (1989).

[18]   *Id.*

[19]   *Hadeen*, 112 F.3d 1339, 1347 (8th Cir. 1997)(*citing Terry A. Lambert Plumbing, Inc. V. Western Sec. Bank*, 934 F.2d 976, 980 (8th Cir. 1991).

6

elements of a §1962(c) RICO claim because (1) the Plaintiffs fail[ed] to identify the persons submitting, mailing or transmitting any of the alleged fraudulent documents;[20] (2) the Plaintiffs fail[ed] to specify the dates upon which the alleged documents or communications were filed, mailed or transmitted;[21] and (3) the Plaintiffs fail[ed] to identify the "persons allegedly perpetuating the fraudulent acts, the timing of the alleged acts or any particulars related to the alleged acts."[22]

Rule 8(a) of the *Federal Rules of Civil Procedure* states that a Plaintiff only has to make a "short and plain statement of the claim showing that the Plaintiff is entitled to relief." Rule 9(b), however, requires a party to state with particularity, when alleging fraud or mistake, the circumstances constituting the fraud or mistake." Despite the pleading rules set forth in Rules 8 and 9 of the *Federal Rules of Civil Procedure*, Rule 11(b)(3) provides that:

> By presenting to the Court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

---

[20] *See Defendants' Motion to Dismiss Plaintiffs' Claims Under the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d)* at 5 (Doc. 7)(02/19/2010).

[21] *Id.*

[22] *Id.*

In *Jackson v. First Fed. Sav. Of Arkansas, F.A.*, the Court looked to *Wright and Miller* for guidance. *Wright and Miller* explained the conundrum of determining whether or not a pleading sufficiently meets Rule 9(b) requirements, despite the fact that said pleading might not be as detailed as the Defendants would like:

> On the one hand, Defendants should not be subjected to unsubstantiated or baseless charges of fraudulent conduct, nor should they be required to respond to accusations so vague that Defendants cannot meaningfully answer them. On the other hand, wrongdoers should not be allowed to hide behind walls of secrecy and those injured should not be stopped at the threshold because they know only the general outlines, and not the hidden details, of schemes and conspiracies. The **task of the Court in ruling on a 9(b) motion is to balance those two competing interests**.[23]

Keeping in mind the precept that the focus of a Rule 9(b) inquiry is whether the factual allegations which are supposed to show fraud are sufficient, *Wright and Miller* provide the following overview of the Rule's requirement:

> The sufficiency of a particular pleading under Rule 9(b) depends upon a number of variables. For example, the degree of detail required often turns on the context in which the fraud is alleged to have occurred. . . . The sufficiency of a fraud pleading also varies with the complexity of the transaction in question. When the issues are complicated or the transactions cover a long period of time, Courts tend to require less of the pleader. Perhaps **the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to**

---

[23] *Jackson v. First Fed. Sav. Of Arkansas, F.A.*, 709 F. Supp. 863 (E.D. Ark. 11/15/1988) (citing 5 *Wright and Miller*, §§ 1297-8; Note, *Pleading Securities Fraud with Particularity Under Rule 9(b)*, 97 Harv.L.Rev. 1432 (1984)).

**prepare a responsive pleading**.[24]

The Seventh Circuit extensively discussed the relaxation of the Rule 9(b) requirements, **particularly with regard to <u>mail fraud</u>**, in *Corley v. Rosewood Care Center, Inc. of Peoria*.[25]   In that case, the Plaintiff alleged that the Defendants overcharged for the services they provided to the residents of Rosewood Care Center ("Rosewood") and made misrepresentations to prospective residents of Rosewood and actual Rosewood residents and their relatives about the availability of private suites, the availability of two entree choices at each meal and the guarantee of continuing care with Medicaid reimbursement.[26]   The Plaintiffs alleged that the Defendants executed this scheme via innumerable predicate acts of mail fraud occurring over a significant period of time, directed against a substantial number of victims, all of whom experienced distinct injuries.[27]   Furthermore, the nature of the alleged conduct carried the threat that the Defendants would continue to conduct business in this

---

[24] *Jackson*, 709 F. Supp. 863 (E.D. Ark. 11/15/1988)(citing 5 *Wright and Miller*, § 1298 at 410-415); *see also In re Medtronic, Inc.*, No. 08-1905 (D. Minn. 02/05/2009)(*reaffirming Jackson*, stating, "Discovery may be used to develop admissible evidence to substantiate a pleaded claim").

[25] *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041, 1050-1051 (7th Cir. 1998).

[26] *Id.*

[27] *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041, 1050-1051 (7th Cir. 1998);  *see also Morgan v. Bank v. Waukegan*, 804 F.2d 970, 975; *Arenson v. Whitehall Convalescent and Nursing Home*, 880 F. Supp. 1202, 1210-11 (N.D. Ill. 1995) (*Morgan* factors support finding of "continuity" in the context of mail fraud scheme affecting all nursing home residents).

fraudulent fashion at their various nursing homes.[28]  Given these facts, the Court held

that "if Corley's allegations are accepted as true, he could indeed prove a set of facts

consistent with those allegations that would establish a pattern of racketeering activity

under the RICO statute."[29]

The Defendant argued that the Plaintiffs allegations should not be considered

by the Court because they were not sufficiently specific to satisfy Rule 9(b)'s

requirement that "circumstances constituting fraud . . . be stated with particularity."[30]

In addressing the Defendants argument, which is identical to the argument made

by the Defendants in the case *sub judice*, the *Corley* Court recognized it's holding in

previous cases: that allegations of mail and wire fraud, including cases wherein the

offenses comprise predicate acts of a RICO pattern, must comply with Rule 9(b) and

that to satisfy the particularity requirement a RICO Plaintiff is required to allege the

time, place, and content of an allegedly fraudulent communication, as well as the

parties to that communication.[31]  The Court also noted that, although the Plaintiff

generally identified the content of allegedly fraudulent communications, he was

unable to state the specific time or place that a communication was made, or identify

---

[28]  *Corley*, 142 F. 3d 1041, 1050-1051 (7th Cir. 1998).

[29]  *Corley, supra* note *28*; s*ee also Conley, supra* note 4.

[30]  *Corley , supra* note 28.

[31]  *Id.*

the particular Rosewood residents or relatives to whom the communication were directed.[32]  The Plaintiff argued that such specific information was in the hands of the Defendants and that he would be able to obtain a list of other Rosewood residents affected by the alleged scheme during discovery.[33]    Taking these facts and circumstances into account, the Court held:

> We have noted on a number of occasions that **the <u>particularity requirement of Rule 9(b) must be relaxed</u> where the Plaintiff lacks access to all facts necessary to detail his claim**, and **that is most likely to be the case where, as here, the Plaintiff alleges a fraud against one or more third parties**.[34]  Corley's complaint identifies certain other Rosewood residents to whom the various misrepresentations were communicated, and with respect to the identified residents, he details the circumstances of the alleged frauds with sufficient particularity.  To the extent the complaint makes allegations relating to other classes of unidentified Rosewood residents, however, we believe that Rule 9(b)'s particularity requirement must be relaxed if, at the time the complaint was filed, Corley had been denied access in discovery to information that would identify those residents.  **Predicate acts of racketeering relating to those residents may be pled more generally**, as Corley has done here by referencing his own experiences with Rosewood in contracting for the care of his mother and alleging in some detail that other residents and their relatives also were victimized by the identical scheme.[35]

   Consonant with the view of the Seventh Circuit, the Eighth Circuit, citing

---

[32]  *Id.*

[33]  *Id.*

[34]  *Corley, supra* note 28(7th Cir. 1998)(*citing Schiffels v. Kemper Fin. Serv., Inc.*, 978 F.2d 344, 353 (7th Cir. 1992);  *see also Jepson*, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994); *Arenson v. Whitehall Convalescent and Nursing Home*, 880 F. Supp. 1202, 1210-11 (N.D. Ill. 1995)

[35]  *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041, 1050-1051 (7th Cir. 1998).

Arkansas case law and the United States Supreme Court, has consistently held, on numerous occasions, that Rule 9(b) should not effectively bar certain types of claims, such as civil RICO claim, where the Plaintiffs lack access to all of the facts necessary to detail the claim, and that the flexibility provided by Rule 11(b)(3) allows pleadings based on evidence reasonably anticipated after further investigation or discovery.[36]

Arkansas Courts have particularly recognized a need for leniency and an exception to Rule 9(b) in cases where a Plaintiff may not be able to plead the precise role of each Defendant when a group of Defendants has acted in concert to cause the complained of injury.  Under those circumstances, Courts have held that "it is appropriate to plead the actions of the group and leave development of individual liability questions until some discovery has been undertaken, rather than to dismiss the Plaintiff because he does not have what may be concealed information."[37]

In *Peters v. Amoco Oil Co.*, the Court concluded that, even though the Plaintiffs' claims lacked the specificity required by Rule 9(b) of the *Federal Rules of Civil Procedure*, the Plaintiffs' claims of fraudulent concealment and conspiracy to commit fraudulent concealment sufficiently alleged that the Defendants acted as a

---

[36] *Rotella v. Wood*, 528 U.S. 549, 560 (2000)(*citing, e.g.*, *Corley*, *supra* note 28 (7th Cir. 1998)(relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim).

[37] *Peters v. Amoco Oil Co.*, 57 F. Supp.2d 1268 (N.D. Ala. 06/21/1999); *see also In re Ann Taylor Stores Securities Litig.*, 807 F. Supp. 990 (S.D.N.Y. 1992).

12

group and were of the type envisioned by the *Jackson* Court because **the claims provide each individual Defendant with <u>sufficient notice and information</u> <u>to answer the allegations contained in the complaint</u>**.[38]

## D.    INJURY

As was stated in the complaint, as a direct and proximate result of Defendants' willful, knowing and intentional violations the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d), the Plaintiffs have suffered injuries to their property and/or business, including but not limited to: exorbitant fees paid by Plaintiffs for visas and other immigration and recruitment-related services; interest on debts assumed by Plaintiffs to pay such fees; losses of personal and real property incurred in reliance on Defendants' fraudulent acts; lost and unpaid wages; lost employment opportunities, and other pecuniary and/or losses to real or personal property.   The Defendants have addressed and contested each of the elements that a Plaintiff must show in order to sufficiently support a claim under 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) save and except the element of injury, all of which are generally denied in the Defendants' answer to the Plaintiffs' complaint, but not specifically contested in this *Motion*.

## II.    THE NECESSARY PROOF TO SUPPORT A CLAIM FOR VIOLATION OF 18 U.S.C. §1962(D) RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

---

[38] *Peters, supra* note 37.

After the Plaintiffs successfully establish the right to relief under 18 U.S.C. §1962(c), they may present evidence to show a conspiracy to violate 18 U.S.C. §1962(d) of the *Racketeer Influenced and Corrupt Organizations Act* by presenting evidence that the Defendants entered into an agreement to breach the statute.[39]  The Plaintiffs do not have to show that the parties objectively manifested an agreement to participate in the affairs of the enterprise and "need only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [each Defendant's] actions."[40]

### III.    THE FACTS AND ALLEGATIONS SET FORTH BY THE PLAINTIFFS SUFFICIENTLY SUPPORT A CLAIM FOR VIOLATIONS OF THE *RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT*, 18 U.S.C. §1962(C) AND 18 U.S.C. §1962(D)

#### A.    THE PLAINTIFFS' ALLEGATIONS WERE SUFFICIENTLY SPECIFIC

As is discussed *infra*, RICO creates a civil cause of action for "any person injured in his business or property by reason of a violation of §1962."[41]  In order to maintain a cause of action for a violation of §1962(c) of the *Racketeer Influenced and Corrupt Organizations Act*, the Plaintiffs must show that the conduct of an enterprise through a pattern of racketeering injured in their business or property by reason of a

---

[39]    *Hadeen , supra* note 39(*referencing Bennett*, *supra* note12).

[40]    *Hadeen , supra* note 39(*citing Darden*, *supra* note 14).

[41]    18 U.S.C. §1962(c)

violation of §1962.[42]   If this Court takes into account the facts contained in the Plaintiffs' complaint as well as all of the evidence contained within the documentation attached to said complaint, accepts the allegations contained in the complaint as true and draws all reasonable inferences from the complaint in favor of the Plaintiffs, in accordance with the applicable standard of care, then the Plaintiffs respectfully submit that the Court must allow the Plaintiffs to move forward with **all** of their claims against the Defendants, including their claims for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d).[43]

## A.   ENTERPRISE

### 1.   Common or Shared Purpose

The Plaintiffs provided extensive facts and details with regard to the ongoing business relationship between all of the named Defendants, Andrew Hague and the United States Consular officers in the Phillippines, which will be discussed further below in § III(B) of this *Response*.   Specifically, the Plaintiffs allege that the Defendants have an ongoing business relationship for "the common purpose of recruiting, transporting, providing, processing, and obtaining foreign workers to work in different country clubs and other food and beverage service industry establishments

---

[42] *Id.*

[43] *Hafley, supra* note 3.

in different states, including Arkansas[44] ...and with the common purpose of selling work opportunities to Filipino workers to convince such workers to pay high fees and to travel to the United States to work for companies including Star One and Star One International."[45]

## 2.    Continuity of Structure and Personnel

"Continuity of structure" exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing basis."[46]    Both the structure and the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise.[47]  Star One and Star One International is an ongoing business that has been providing workers to different country clubs and other food and beverage service industry establishments in different states, including Arkansas, for a long period of time.[48]  There is no doubt, and the Defendants don't deny in their *Motion to Dismiss*, that the Defendants and the alleged entity in question lacks continuity of structure and personnel.

## 3.    Ascertainable Structure

---

[44]  *Complaint* (Doc. 1), ¶ 76.

[45]  *Complaint* (Doc. 1), ¶ 78.

[46]  *Hadeen, supra* note 39; *see also Kragness, supra* note 8.

[47]  *Id.*

[48]  *Complaint* (Doc. 1), ¶ 76.

In assessing whether an enterprise has an "ascertainable structure distinct from that inherent in a pattern of racketeering, it is the Court's common practice to determine if the enterprise would still exist were the predicate acts removed from the equation, "because an entity and/or enterprise is likely to be clearly distinct from the acts of racketeering when separated from the pattern of racketeering."[49] As is stated above, Star One and Star One International is an ongoing business that has been providing workers to different country clubs and other food and beverage service industry establishments in different states, including Arkansas, for a long period of time.[50] There is no doubt that the Defendants could operate their "business" in a legitimate and legal way, which is evidenced by the *Assurance of Discontinuance* agreement that Star One and Star One International entered into in November of 2008 pursuant to an investigation started by the Attorney General of the State of New York in April of 2008 wherein Star One and Star One International agreed to: (1) not make deductions from its employees' wages or charge its employees by separate transaction for housing, food and/or transportation costs, except where authorized by New York Law; (2) pay any non-exempt employee who works more than forty hours in a week overtime pay at one and one half times his or her regular rate of pay; (3) pay its employees weekly; and (4) pay its employees their full, lawful earned wages for all

---

[49] *Hadeen, supra* note 39(8th Cir. 1997)(*citing Kragness*, *supra* note 8).

[50] *Complaint* (Doc. 1), ¶ 76.

hours worked, including any hours spent in "training."[51]   Therefore, the enterprise would still exist if the Defendants ceased their illegal acts.

## B.   CONDUCT AND A PATTERN OF RACKETEERING

The United States Supreme Court interpreted the conduct requirement to authorize recovery only against individuals who participate in the operation or management of the enterprise itself and has provided the "operation or management test" for Courts to use in determining whether individuals participated in the enterprise stating:

> An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.   An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it.[52]

Courts have also held that individuals "outside" of the enterprise may be liable under §1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs.[53]   Therefore, it is not necessary for a RICO Defendant to have wielded control over the enterprise, but the Plaintiff must prove that the Defendant played some part in the direction of the enterprise's affairs.[54]

---

[51]   *Assurance of Discontinuance*, attached to the Plaintiffs' complaint as *Exhibit C* (Doc. 1-2).

[52]   *Hadeen, supra* note 39 (citing *Bennett, supra* note 12)(announcing the "operation or management" test), cert. denied, 464 U.S. 1008 (1983).

[53]   *Hadeen, supra note 39* (*citing Reves* at 184-85).

[54]   *Darden*, *supra* note 14.

18

Courts have further held that a pattern of racketeering activity is present only when predicate acts are linked by "continuity plus relationship,"[55] and that prohibited activities are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.[56]

The Plaintiffs have provided extensive facts and details with regard to the ongoing business relationship between all of the named Defendants, Andrew Hague and the United States Consular officers in the Phillippines. Although the Defendants allege that the statements made in the Plaintiffs' case are conclusory, their allegations are simply an attempt to dodge **very serious and valid claims** for RICO violations. In their complaint, the Plaintiffs specifically state that the Defendants have an ongoing business relationship, for "the common purpose of recruiting, transporting, providing, processing, and obtaining foreign workers to work in different country clubs and other food and beverage service industry establishments in different states, including Arkansas[57]... with the common purpose of selling work opportunities to Filipino workers to convince such workers to pay high fees and to travel to the United States

---

[55] *Hadeen*, *supra* note 39 (*citing H.J., Inc., supra* note 17.

[56] *Hadeen, supra* note 39 (*citing H.J., Inc., supra* note 17.

[57] *Complaint* (Doc. 1), ¶ 76

19

to work for companies including Star One and Star One International."[58]    The
Plaintiffs then painstakingly go through each and every way the Defendants conspired
and continue to conspire together to commit fraudulent acts that are also describe with
great detail:

> 75.    All Defendants named herein, Andrew Hague and the
> United States Consular officers in the Phillippines constitute an
> association-in-fact, and therefore an enterprise (the "RICO
> Enterprise"), within the meaning of 18 U.S.C. § 1964(4).

> 76.    The RICO Enterprise is an ongoing business
> relationship between all of the named Defendants, Andrew Hague
> and the United States Consular officers in the Phillippines, with the
> common purpose of recruiting, transporting, providing, processing,
> and obtaining foreign workers to work in different country clubs and
> other food and beverage service industry establishments in different
> states, including Arkansas.

> 77.    The RICO Enterprise is engaged in interstate
> commerce, in that its activities and transactions relating to the
> international and interstate movement of workers affect interstate
> commerce and frequently require travel and communications across
> state and international lines.

> 78.    The RICO Enterprise is an on-going business
> relationship with the common purpose of selling work opportunities
> to Filipino workers to convince such workers to pay high fees and to
> travel to the United States to work for companies including Star One
> and Star One International.

> 79.    The members of RICO Enterprise function as a
> continuing unit with a structure for decision-making.

> 80.    Defendants conducted or participated in, and/or
> conspired to conduct or participate in the affairs of the RICO
> Enterprise through a pattern of numerous acts of racketeering activity
> in violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), related
> by its common goal to recruit, obtain, transport, process, and provide
> workers through the use of fraudulent promises and exorbitant fees.

---

[58] *Complaint* (Doc. 1), ¶ 78

81.     Specifically, Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a.     Immigration document fraud in violation of 18 U.S.C. § 1546 (relating to fraud and the misuse of visas, permits and other documents); *see also* 8 C.F.R. §214.2(h)(6)(B)(vi);

b.     Interstate and foreign travel to further its unlawful scheme in violation of 18 U.S.C. § 1952;

c.     Mail fraud to further its unlawful scheme in violation of 18 U.S.C. § 1341; and

d.     Wire fraud to further its unlawful scheme in violation of 18 U.S.C. § 1343.

82.     The RICO Enterprise engages in recruiting for work in the United States by making  fraudulent promises and charging exorbitant fees for its recruitment and immigration services.

### *Immigration Document Fraud: 18 U.S.C. § 1546(a)*

83.     As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise submitted false and fraudulent documents in support of H-2B visa applications to U.S. Citizenship and Immigration Services and the U.S. Department of Labor ("USDOL").[59]  Employers seeking to hire employees on H-2B visas must first submit an application for temporary labor certification, known as an Application for Alien Employment Certification (referred to as "ETA 750"), to the applicable state workforce agency and the USDOL for approval.[60]  In such applications, Defendants certified under penalty of perjury that "The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law."[61]

---

[59]  *See* 20 C.F.R. Part 655, governing the labor certification process with which employers must comply in order to obtain an H-2B visa;  8 C.F.R. § 214.(h)(1)(D); and 20 C.F.R. §§ 655.0 to 655.4.

[60]  *Id.*

[61]  *Id.*

84.    These willful, knowing and intentional acts constitute immigration document fraud in violation of 18 U.S.C. § 1546(a).

**Unlawful Acts In Support of Racketeering Enterprises Through Interstate and Foreign Travel: 18 U.S.C. § 1952.**

85.    As set forth in the preceding paragraphs, Defendants in the RICO Enterprise regularly engaged in and/or conspired to engage in interstate and foreign travel with the intent of carrying on its unlawful activities.

87.    Defendants in the RICO Enterprise frequently engaged in interstate and/or foreign travel to effectuate the fraudulent schemes discussed hereinabove.

88.    These willful, knowing and intentional acts violated 18 U.S.C. § 1952.

**Pattern of Related Racketeering Acts**

89.    Defendants have engaged in the racketeering activity described in this Claim repeatedly with respect to the 100 to 200 Filipino H-2B workers employed by Defendants and working in the State of Arkansas and other states.

90.    The racketeering activity committed by Defendants continues presently as the RICO remains engaged in activities to fraudulently recruit workers in the Phillipines and exploit them in the United States.

91.    Defendants rely on the racketeering acts described in this *Complaint* to conduct their regular business activities. Through these racketeering activities, Defendants have successfully sought to profit from the fraudulent recruitment of Plaintiffs and other Class Members, and to continue to recruit, obtain, provide and maintain a consistent and uncomplaining Filipino H-2B guest worker labor force at Defendants' operations.

92.    Defendants' acts are a direct and proximate cause of injuries to Plaintiffs and other Class Members, including, but not limited to, the payment of high fees, assumption of significant interest bearing debt, loss of real and personal property, lost work opportunities, lost or unpaid wages and additional legal fees.

93.    As set forth in the preceding paragraphs, the racketeering acts have similar participants: all of the Defendants.

Defendants directed their racketeering activities at similar victims: Filipino workers who contacted Defendants in search of stable employment in the United States.

94.    Defendants' acts have similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiffs and other Class Members, and use of similar employment practices and policies with respect to Plaintiffs and other Class Members.

### *Mail Fraud*: 18 U.S.C. § 1341

95.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

96.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise used the United States Postal Service on numerous occasions to further this fraudulent scheme.

97.    These willful, knowing, and intentional acts constitute mail fraud in violation of
18 U.S.C. § 1341.

### *Wire Fraud: U.S.C. § 1343*

98.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

99.     As is set forth fully in the preceding paragraphs, Defendants in the RICO Enterprise used wire communications via telephone, fax, and/or email on numerous occasions to further this scheme.

100.    These willful, knowing, and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

16.    Star One recruited and recruits, and employed and employs, Filipino individuals, including, but not limited to, all of the named Plaintiffs, to work in Arkansas, as well as several other states,

pursuant to H-2B visas.  Star One promised Plaintiffs they would be treated fairly and compensated in accordance with federal law.  Star One promised Plaintiffs they would get at least 40 hours of work each week at specific job sites with a specific rate of pay.

17.     Plaintiffs are guest workers who were brought into the United States through the federal government's H-2B program to work in different country clubs and other food and beverage service industry establishments.

18.     With the average income in the Philippines varying between $1,000.00 to $2,000.00 per year, some of the guest workers and their families went into debt to send Plaintiffs to work in the United States.  For example, Plaintiff Morena Roco paid Star One over $9,000.00 in placement and legal fees in order for her to work in the United States.

19.     Upon their arrival to the United States, Plaintiffs were informed that the specific jobs where they were supposed to work were no longer available.  Instead, Plaintiffs were offered different jobs at a different rate of pay in Arkansas and other states.

20.     Upon information and belief, in some instances Defendants failed to pay the return transportation costs of workers who did not accept different jobs, as they are required to do pursuant to 8 CFR § 214.2 (h)(6)(vi)(E).  A number of Star One employees walked out and disappeared.  Consequently, the Plaintiffs and those similarly situated had no choice but to accept new jobs at the different job sites with different rates of pay.

21.     Pursuant to the requirements of 8 CFR § 214.2(h)(2)(i)(D), Defendants were required to file a new I-129 *Petition for Change of Employer* with the U.S. Citizenship and Immigration Service for each work location.  Plaintiffs were forced to accept the aforementioned jobs at the new job sites.  As a result of the Defendant's failure to file the required petitions for change of employer, Plaintiffs were forced to work without valid legal authorization, displacing qualified American workers and violating prevailing wage and hour and immigration laws.

23.     While employed by Defendants, Plaintiffs were

provided housing[62] and transportation to their job site(s)[63], a charge for both of which were taken out of their wages. Deductions were taken in the years 2006 and 2007. In the subsequent years of 2008 and 2009, Star One provided the housing and transportation for free, but even in so doing failed to considered or treat these amounts as wages earned by Plaintiffs.

24.     Additionally    during    their    employment    with Defendants, Plaintiffs were required to wear uniforms[64] and use cell phones[65] at work, the costs of which were also deducted from the Plaintiffs' wages.

25.     Plaintiffs did not receive prompt payment for their work pursuant to the requirements of the FLSA. While some Plaintiffs received cash advances before they were paid their wages, others worked for weeks and/or months before receiving compensation for their services.

26.     Furthermore, pursuant to Defendants' policies and procedures, Plaintiffs were required to attend training sessions. Plaintiffs were "employees" within the meaning of the FLSA for the purposes of said training sessions because their attendance was and is required by Defendants for the immediate benefit of Defendants, and is directly related and specific to the employees' employment with Defendants.

27.     For example, Plaintiff Morena Roco was a team leader for H-2B waiters assigned in Arkansas. She was required to provide training to other H-2B waiters approximately once per week for two hours or more and was not compensated for this time pursuant to the requirements of the FLSA.

28.     When Plaintiffs finally got paid, they received little in net wages because of the large amount of money Defendants deducted from their gross wages for housing, food, uniforms, cell phones and transportation. For example:

---

[62] Morena Roco's *Remittance Checks,* attached to Plaintiffs' complaint as *Exhibit A* (Doc. 1-2).

[63] *Id.*

[64] *Id.*

[65] *Id.*

28.1    Plaintiff Morena Roco worked 22.75 hours at a rate of $7.42 per hour from July 27, 2009 up to and until August 2, 2009. Her net pay for almost 23 hours of work was $3.63.[66]

28.2    Plaintiff Morena Roco worked 43 hours at a rate of $7.42 per hour from July 23, 2009 up to and until July 30, 2009. Her net pay for 43 hours of work was $45.94.[67]

29.    Defendants deducted the following amounts from Plaintiffs' wages (hereinafter referred to as "illegal deductions"):

a.    $100.00 per week for housing;

b.    $60.00 per week for transportation;

c.    $40.00 per week for food;

d.    $70.00 for uniforms ($40.00 for a vest, $20.00 for shirts, and $10.00 for an apron); and

e.    $50.00 for cell phone (when they were required).

30.    As a result of illegal deductions, Plaintiffs were not paid all of their wages in a timely manner, nor were they paid at the wage rate Defendants agreed to pay them.

31.    The weekly total for the wage deductions resulted in a reduction of the wages paid to Plaintiffs fell below the minimum wage rate set forth in and required by the FLSA, 20 U.S.C. § 203(m).

32.    Credit in amount equal to the value of the illegal deductions was not included in the calculation of overtime wages, pursuant to the requirements of the FLSA. 29 U.S.C. § 207 (e). As a result Plaintiffs were not fully compensated for all of the hours of overtime they worked.

---

[66] *Id.*

[67] Morena Roco's *Remittance Checks, supra* note 62.

26

33.    Plaintiffs were required to pay "placement fees" to come to the United States to engage in the assigned jobs given to them by the Defendants under the H-2B program.  8 U.S.C. 1101 (a)(15)(H)(ii)(b).  At no time did Defendants reimburse Plaintiffs in full for these "placement fees," which fees included the cost of obtaining visa application and issuance fees, transportation costs and border crossing fees, all of which were incurred by Plaintiffs in order to come work specifically for Defendants herein, making these costs and fees an incident of Plaintiffs' employment with Defendants and were primarily for the benefit or convenience of Defendants.

34.    Plaintiffs had an express, constructive and/or implied agreement that Defendants would pay them wages at the rate required by the applicable federal and/or state law when said wages were due for each hour or part of an hour Plaintiffs performed compensable work under the FLSA for Defendants.

35.    Defendants breached the aforementioned agreements by withholding pay, making illegal deductions, not including said illegal deductions in the calculation of wages and paying a different rate of pay than that which Plaintiffs had agreed to before traveling to the United States, all of which were in violation of the FLSA. Defendants also breached agreements by failing to file the necessary and proper petitions for change of employer in compliance with 8 C.F.R. §214.2(h)(2)(i)(D).

36.    Plaintiffs anticipate that Defendants brought somewhere between 100 to 200 similarly situated guest workers pursuant to the H-2B visa program to work in the State of Arkansas and other states during the time period relevant to the allegations herein above.[68]

Attached to the Plaintiffs' complaint as *Exhibit B* and *C* are documents derived

from and investigation started by the Attorney General of the State of New York in

April of 2008 against the Defendant herein for **conduct underline identical to the conduct**

**alleged and complained of herein**.  On November 5, 2008, the parties to that

investigation stipulated and agreed to settle and resolve the investigation by entering

---

[68]  *Complaint* (Doc. 1).

27

into an *Assurance of Discontinuance* agreement.[69]  Star One agreed to: (1) not make deductions from its employees' wages or charge its employees by separate transaction for housing, food and/or transportation costs, except where authorized by New York Law; (2) pay any non-exempt employee who works more than forty hours in a week overtime pay at one and one half times his or her regular rate of pay; (3) pay its employees weekly; and (4) pay its employees their full, lawful earned wages for all hours worked, including any hours spent in "training."[70]

Star One also agreed to comply with all provisions of the New York Labor Law in the operation of its business and to monitor their compliance with the New York Labor Law and regulations by providing the Attorney General of the State of New York starting January 10, 2009 and January 10, 2010 with (1) a complete set of time records and payroll records for all persons employed by Star One in the State of New York, and (2) documents related to H-2B visas.[71]

Also attached to the Plaintiffs' complaint as *Exhibit A* are multiple *Remittance Detail Reports* and "check stubs" which not only show that the **same illegal deductions** that were being deducted from the paychecks of the Star One employees in the New York investigation were being deducted from the paychecks of Morena

---

[69] *Assurance of Discontinuance*, *supra* note 51.

[70] *Id.*

[71] *Id.*

Roco, one of the Plaintiffs and Class Representatives in this cause of action.

The Plaintiffs specifically state that the paychecks of Morena Roco were paid via **electronic fund transfer**, also know as a "**wire transfer**." These check stubs and *Remittance Detail Reports* are **clearly dated** and stamped "EFT–Non-Negotiable." Furthermore, the documents related to H-2B visas, specifically discussed above with regards to this case, and specifically discussed in this *Response* and in the complaint and *Exhibit C*[72] attached to said complaint were sent via facsimile and mail to and from the Defendants named herein.

All of this information clearly shows that the Plaintiffs have plead facts sufficient enough to survive a *Motion to Dismiss* for failure to state a claim upon which relief can be granted based on Rule 9(b) of the *Federal Rules of Civil Procedure*. The Plaintiffs have provided a wealth of information and it is clear from the New York investigation that the Defendants are in possession of much of the documentation, such as (1) a complete set of time records and payroll records for all persons employed by Star One in the State of [Arkansas] and (2) documents related to H-2B visas,[73] that the Plaintiffs vitally need, and have no way of accessing, to make this complaint more specific.

### B. Should the Court Find the Plaintiffs Failed to Plead

---

[72] *Id.*

[73] *Id.*

**SUFFICIENTLY, THE PLAINTIFFS SHOULD BE GIVEN LEAVE TO VOLUNTARILY DISMISS THESE PARTICULAR CAUSES OF ACTION WITHOUT PREJUDICE.**

The Plaintiffs include the following alternative request in an **abundance of caution** despite the unlikely nature that the need for the Plaintiffs to voluntarily non-suit the claims at issue will arise.

In the event this Court determines that the Plaintiffs have failed to plead their claims under the *Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. §1962(c) and/or 18 U.S.C. §1962(d) with sufficient specificity, the Plaintiffs fully intend to file an amended complaint in an attempt to alleviate any deficiencies.  For example, attached hereto as *Exhibit A* is a letter sent to Consul Tilghman, Nonimmigrant Visa Chief at the United States Embassy in the Phillipines, from Ernesto G. Ramos requesting an expedited meeting on behalf of Star One, Star One International, Mary Jane Hague and Honorable Andrew Hague that the Plaintiffs intend to attach as one exhibit to an amended complaint in this matter.

However, should the Court determine that the Plaintiffs failed to plead sufficiently and, in the **unlikely event** the Plaintiffs are not provided the opportunity to amend their complaint, the Plaintiffs would like to be given the opportunity to voluntarily non-suit their claims under the *Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) *without prejudice* with the right to re-file said causes of action within one year pursuant to Rule 41(a)

of the *Federal Rules of Civil Procedure*.

## **CONCLUSION**

The facts alleged in the Plaintiffs' complaint are not isolated events; they represent a pattern of events that have occurred in the State of New York, and that have occurred and continue to occur in the State of Arkansas. The Plaintiffs have provided a significant amount of information, but it is clear in this case that the Defendants are in possession of much of the documentation that the Plaintiffs need in order to be more specific in their pleadings.

Despite this fact, the Plaintiffs have plead facts sufficient enough to survive a *Motion to Dismiss* for failure to state a claim upon which relief can be granted based on Rule 9(b) of the *Federal Rules of Civil Procedure*. However, **even if** this Court determines that more specific information would traditionally be required under Rule 9(b), this Court should consider the Eighth Circuit, citing Arkansas case law and the United States Supreme Court, all of which have has consistently held, on numerous occasions, that **Rule 9(b) should not effectively bar certain types of claims**, **such as civil RICO claim**, where the **Plaintiffs** **lack access to all of the facts necessary to detail the claim**, that the **flexibility** provided by Rule 11(b)(3) **allows pleadings based on evidence reasonably anticipated after further investigation or discovery.**[74] "It is appropriate to plead the actions of the group and leave development

---

[74] *Rotella*, *supra* note 36; *Jackson*, supra note 23.

of individual liability questions until some discovery has been undertaken, rather than to dismiss the plaintiff because he does not have what may be concealed information."[75]

WHEREFORE, premises considered, all Plaintiffs, each individually and on behalf of others similarly situated, respectfully asks that the *Motion to Dismiss Plaintiffs' Claims Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d)* be denied; or, in the alternative, that the Plaintiffs be given the opportunity to conduct meaningful discovery in order to amended their Complaint; for all attorney's fees and all costs incurred herein; and for all other good and proper relief to which they may be entitled, whether or not specifically requested herein.

Respectfully submitted,

**PLAINTIFFS MORENO ROCO, ERICZON MACARAYAN, FRANCISCO ABSIN, LEONOR LACSINA and ROGELIO RINGOR, EACH INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 400
Little Rock, AR 72211
Telephone: (501) 221-0088
Facsimile: (866) 591-4661
Email: josh@sanfordlawfirm.com

---

[75] *Peters, supra* note 37; *see also In re Ann Taylor Stores Securities Litig.*, 807 F. Supp. 990 (S.D.N.Y. 1992).

**Josh Sanford**
**Ark. Bar No. 2001037**

and

HOLLEMAN & ASSOCIATE, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile:  (501) 975-5043

By:     /s/ John T. Holleman
**John T. Holleman**
**Ark. Bar No. 91056**
Jholleman@johnholleman.net

**Stephanie Ann Linam**
**Ark. Bar No. 2007-132**
stephanie@johnholleman.net


### CERTIFICATE OF SERVICE

I, John T. Holleman, hereby certify that a true and correct copy of the foregoing was filed via the CM/ECF system, this the 1st day of March, 2010, and that the foregoing shall send notification of such filing to the following:

Vince Chadick
BASSETT LAW FIRM, LLP
P.O. Box 3618
Fayetteville, AR 72702

Marlene Quintana
GRAY ROBINSON, P.A.
1221 Brickell Avenue, Suite 1650
Miami, FL 33131

/s/ John T. Holleman
John T. Holleman