## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**MORENA ROCO, ERICZON MACARAYAN,**
**FRANCISCO ABSIN, LEONOR LACSINA,**
**and ROGELIO RINGOR, EACH**                                        **PLAINTIFFS**
**INDIVIDUALLY AND ON BEHALF OF**
**OTHERS SIMILARLY SITUATED**

**vs.**                              **Case No. 4:10-CV-30**

**STAR ONE STAFFING INTERNATIONAL, INC.**
**STAR ONE STAFFING, INC., MARY JANE HAGUE,**
**JOHN C. CARRUTHERS, and RUTH CARRUTHERS**                **DEFENDANTS**

### PLAINTIFFS' FIRST AMENDED AND SUBSTITUTED COMPLAINT

COME now Plaintiffs Morena Roco, Ericzon Macarayan, Francisco Absin, Leonor Lacsina, and Rogelio Ringor, each individually and on behalf of others similarly situated, by and through their attorneys of Holleman & Associates, P. A., and Sanford Law Firm, PLLC, and for their *First Amended and Substituted Complaint* (hereinafter "*Complaint*") against Defendants Star One Staffing International, Inc., Star One Staffing, Inc., Mary Jane Hague, John C. Carruthers and Ruth Carruthers (hereinafter "Defendants"), do state and allege as follows:

### JURISDICTIONAL STATEMENT

1.       Plaintiff Morena Roco is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, she was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the *Fair Labor Standards Act* (hereinafter "FLSA").

2.       Plaintiff Ericzon Macarayan is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

3.      Plaintiff Francisco Absin is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

4.      Plaintiff  Leonor Lacsina is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, she was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

5.      Plaintiff Rogelio Ringor is a resident and citizen of Pulaski County, Arkansas.  At all times relevant to this *Complaint*, he was employed by the Defendants and was classified as an hourly employee and non-exempt from the requirements of the FLSA.

6.      Defendant Star One Staffing International, Inc. (hereinafter "Star One International"), is a Florida corporation, with its principal place of business located in Miami, Florida. Star One International has the necessary minimum contacts to confer specific personal jurisdiction for the following reasons:

6.1     Star One International defrauded Plaintiffs into signing contracts which were to be and which have been largely if not exclusively within the State of Arkansas.

6.2     The causes of action set forth herein resulted, in whole or in part, from the fraud of Star One International in the State of Arkansas.

6.3     Star One International contracted with various country clubs in Arkansas to provide services and employees to the country clubs in the State of Arkansas.

6.4     Star One International has engaged in the conscious and purposeful exercise of the privilege of conducting business in the State of Arkansas.

6.5     Star One International has registered with the Arkansas Secretary of State.

6.6     The registered agent through which Star One International may be served is The National Registered Agents, Inc. of Arkansas, located at 455 West Maurice Street, Hot Springs, AR 71901.

7.     Defendant Star One Staffing, Inc.  (hereinafter "Star One"), is a Florida corporation, with its principal place of business located in Miami, Florida.   Star One does not maintain registration with the Arkansas Secretary of State.   However, Star One has the necessary minimum contacts to confer specific personal jurisdiction for all of the other reasons set forth in sub-paragraphs 6.1 through 6.4, above.   The President and registered agent for service of process for Star One is Mary Jane Hague, who may be served at  2414 Coral Way, 2nd Floor, Miami, Florida 33145 pursuant to Arkansas' long arm statute.[1]

8.     Defendant Mary Jane Hague (hereinafter "Hague") is an individual residing in Miami, Florida.  Hague may be served with process pursuant to Arkansas' long arm statute[2] at 2414 Coral Way, 2nd Floor, Miami, Florida 33145.  As Hague is the President, Treasurer and a Director of Star One, as well as the President and a Director of Star One International, the latter of which maintains registration with the Arkansas Secretary of State.  She has the necessary minimum contacts to confer specific personal jurisdiction.

9.     Defendant John C. Carruthers is an individual residing in Miami, Florida.  John C. Carruthers may be served with process pursuant to Arkansas' long arm statute[3] at 2414 Coral Way, 2nd Floor, Miami, Florida 33145.   He has the necessary minimum contacts to confer specific personal jurisdiction as John C. Carruthers is an officer of Star One as well as the Secretary,

---

[1]  Ark. Code Ann. § 16-4-101.

[2]  *Id.*

[3]  *Id.*

3

Treasurer, a Director and an Owner of Star One International, which maintains registration with the Arkansas Secretary of State.

10.   Defendant Ruth Carruthers is an individual residing in Miami, Florida. Ruth Carruthers may be served with process pursuant to Arkansas' long arm statute, Ark. Code Ann. § 16-4-101, at 1009 Nautica Drive, Weston, Florida 33327. She has the necessary minimum contacts to confer specific personal jurisdiction as Ruth Carruthers is the Vice President, Secretary, and a Director and an Owner of Star One.

11.   Plaintiffs bring this lawsuit on behalf of themselves individually and on behalf of all other employees of Defendants[4], whether past, present or future, who are classified as hourly employees and non-exempt from the requirements of the FLSA , but who were not compensated in accordance with applicable laws for three years prior to filing of this law suit.

12.   Plaintiffs seek an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and for compensation and other relief under the FLSA, as amended, 29 U.S.C. §§ 215, 216(b) and 217.

13.   At all times material herein, Plaintiffs have been entitled to the rights, protection and benefits provided under the FLSA.

14.   Plaintiffs also seek to represent the Class of all Filipino H-2B guest workers who were recruited by Star One[5] five years prior to the filing of this cause of action law suit and who

---

[4]   The term "Plaintiffs" refers to the Plaintiffs and other similarly situated current and/or former employees of Star One Staffing International, Inc., and Star One Staffing, Inc.

[5]   The term "Star One" refers to both Star One Staffing International, Inc. and Star One Staffing, Inc., unless the circumstances indicate that it is meant to refer to only Star One Staffing International, Inc. or Star One Staffing, Inc.

4

traveled/or were transported to the United States.

15.     Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b), 217; 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Venue lies within this district, pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

16.     Star One recruited and recruits, and employed and employs, Filipino individuals, including, but not limited to, all of the named Plaintiffs, to work in Arkansas, as well as several other states, pursuant to H-2B visas.  Star One promised Plaintiffs they would be treated fairly and compensated in accordance with federal law.  Star One promised Plaintiffs they would get at least 40 hours of work each week at specific job sites with a specific rate of pay.

17.     Plaintiffs are guest workers who were brought into the United States through the federal government's H-2B program to work in different country clubs and other food and beverage service industry establishments.

18.     With the average income in the Philippines varying between $1,000.00 to $2,000.00 per year, some of the guest workers and their families went into debt to send Plaintiffs to work in the United States.  For example, Plaintiff Morena Roco paid Star One over $9,000.00 in placement and legal fees in order for her to work in the United States.

19.     Upon their arrival to the United States, Plaintiffs were informed that the specific jobs where they were supposed to work were no longer available.  Instead, Plaintiffs were offered different jobs at a different rate of pay in Arkansas and other states.

20.     Upon information and belief, in some instances Defendants failed to pay the return transportation costs of workers who did not accept different jobs, as they are required to do pursuant to 8 CFR § 214.2 (h)(6)(vi)(E).  A number of Star One employees walked out and disappeared. Consequently, the Plaintiffs and those similarly situated had no choice but to accept new jobs at the

different job sites with different rates of pay.

21.     Pursuant to the requirements of 8 CFR § 214.2(h)(2)(i)(D), Defendants were required to file a new I-129 *Petition for Change of Employer* with the U.S. Citizenship and Immigration Service for each work location.   Plaintiffs were forced to accept the aforementioned jobs at the new job sites.  As a result of the Defendant's failure to file the required petitions for change of employer, Plaintiffs were forced to work without valid legal authorization, displacing qualified American workers and violating prevailing wage and hour and immigration laws.

22.     Plaintiffs' job duties included serving food and drinks, taking orders, and setting, bussing and clearing tables at country clubs and banquet/catering halls.   In Arkansas, these duties were performed at various country clubs in Arkansas.

23.     While employed by Defendants, Plaintiffs were provided housing[6] and transportation to their job site(s)[7], a charge for both of which were taken out of their wages.   Deductions were taken in the years 2006 and 2007.   In the subsequent years of 2008 and 2009, Star One provided the housing and transportation for free, but even in so doing failed to considered or treat these amounts as wages earned by Plaintiffs.

24.     Additionally during their employment with Defendants, Plaintiffs were required to wear uniforms[8] and use cell phones[9] at work, the costs of which were also deducted from the Plaintiffs' wages.

25.     Plaintiffs did not receive prompt payment for their work pursuant to the requirements

---

[6] Morena Roco's Remittance Checks are attached hereto as *Exhibit A*.

[7] *Id.*

[8] *Id.*

[9] *Id.*

of the FLSA.  While some Plaintiffs received cash advances before they were paid their wages, others worked for weeks and/or months before receiving compensation for their services.

26.    Furthermore, pursuant to Defendants' policies and procedures, Plaintiffs were required to attend training sessions.  Plaintiffs were "employees" within the meaning of the FLSA for the purposes of said training sessions because their attendance was and is required by Defendants for the immediate benefit of Defendants, and is directly related and specific to the employees' employment with Defendants.

27.    For example, Plaintiff Morena Roco was a team leader for H-2B waiters assigned in Arkansas.  She was required to provide training to other H-2B waiters approximately once per week for two hours or more and was not compensated for this time pursuant to the requirements of the FLSA.

28.    When Plaintiffs finally got paid, they received little in net wages because of the large amount of money Defendants deducted from their gross wages for housing, food, uniforms, cell phones and transportation.  For example:

> 28.1    Plaintiff Morena Roco worked 22.75 hours at a rate of $7.42 per hour from July 27, 2009 up to and until August 2, 2009. Her net pay for almost 23 hours of work was $3.63.[10]

> 28.2    Plaintiff Morena Roco worked 43 hours at a rate of $7.42 per hour from July 23, 2009 up to and until July 30, 2009.  Her net pay for 43 hours of work was $45.94.[11]

29.    Defendants deducted the following amounts from Plaintiffs' wages (hereinafter referred to as "illegal deductions"):

> a.    $100.00 per week for housing;

---

[10]*Id.*

[11]*Id.*

       b.    $60.00 per week for transportation;

       c.    $40.00 per week for food;

       d.    $70.00 for uniforms ($40.00 for a vest, $20.00 for shirts, and $10.00 for an apron); and

       e.    $50.00 for cell phone (when they were required).

30.    As a result of illegal deductions, Plaintiffs were not paid all of their wages in a timely manner, nor were they paid at the wage rate Defendants agreed to pay them.

31    The weekly total for the wage deductions resulted in a reduction of the wages paid to Plaintiffs fell below the minimum wage rate set forth in and required by the FLSA, 20 U.S.C. § 203(m).

32    Credit in amount equal to the value of the illegal deductions was not included in the calculation of overtime wages, pursuant to the requirements of the FLSA.  29 U.S.C. § 207 (e).  As a result Plaintiffs were not fully compensated for all of the hours of overtime they worked.

33.    Plaintiffs were required to pay "placement fees" to come to the United States to engage in the assigned jobs given to them by the Defendants under the H-2B program.  8 U.S.C. 1101 (a)(15)(H)(ii)(b).  At no time did Defendants reimburse Plaintiffs in full for these "placement fees," which fees included the cost of obtaining visa application and issuance fees, transportation costs and border crossing fees, all of which were incurred by Plaintiffs in order to come work specifically for Defendants herein, making these costs and fees an incident of Plaintiffs' employment with Defendants and were primarily for the benefit or convenience of Defendants.

34.    Plaintiffs had an express, constructive and/or implied agreement that Defendants would pay them wages at the rate required by the applicable federal and/or state law when said wages were due for each hour or part of an hour Plaintiffs performed compensable work under the FLSA

8

for Defendants.

35.     Defendants breached the aforementioned agreements by withholding pay, making illegal deductions, not including said illegal deductions in the calculation of wages and paying a different rate of pay than that which Plaintiffs had agreed to before traveling to the United States, all of which were in violation of the FLSA.  Defendants also breached agreements by failing to file the necessary and proper petitions for change of employer in compliance with 8 C.F.R. §214.2(h)(2)(i)(D).

36.     Plaintiffs anticipate that Defendants brought somewhere between 100 to 200 similarly situated guest workers pursuant to the H-2B visa program to work in the State of Arkansas and other states during the time period relevant to the allegations herein above.

## NEW YORK INVESTIGATION

37.     In April of 2008, the Attorney General of the State of New York started an investigation against Defendants for repeated and persistent illegality by: 1) making prohibited deductions from the wages of guest workers from the Philippines who were employed by Defendants to work at country clubs and other food and beverage services industry establishments in New York; 2) failing to pay employees wages for the full amount of hours worked; 3) failing to pay employees overtime at the required rate, and 4) failing to pay employees earned wages within the time limits.[12] The Attorney General of the State of New York sought relief from April 2002 until the date of filing petition.[13]

38.     On November 5, 2008, the parties to the Petition stipulated and agreed to settle and

---

[12] *Petition* is attached hereto as *Exhibit B*.

[13] *Id.*

resolve the investigation by entering into *Assurance of Discontinuance*.[14]   Under the terms of the

*Assurance*, Defendants agreed to pay the sum of $113,454.00 in full settlement of investigation.[15]

39.     Star One agreed to comply with all provisions of the New York Labor Law in the

operation of its business.[16]   Star One also agreed to monitor their compliance with the New York

Labor Law and regulations by providing the Attorney General of the State of New York starting

January 10, 2009, and January 10, 2010 with (1) a complete set of time records and payroll records

for all persons employed by Star One in the State of New York, and (2) documents related to H-2B

visas.[17]

40.     Star One agreed to: (1) not  make deductions from its employees' wages or charge

its employees by separate transaction for housing, food and/or transportation costs, except where

authorized by New York Law; (2) pay any non-exempt employee who works more than forty hours

in a week overtime pay at one and one half times his or her regular rate of pay; (3) pay its employees

weekly; and (4) pay its employees their full, lawful earned wages for all hours worked, including any

hours spent in "training."[18]

41.     Upon information and belief, Defendants have been engaged in and will continue to

engage in ongoing violations of the FLSA, including illegal deductions, paying to employees less

than minimum wage, not including deductions in calculation of wages, and paying at a different rate

than was  agreed  prior  to  employees'  arrival  in  the  United  States.   Plaintiff  Morena  Roco's

---

[14]*Assurance of Discontinuance* is attached hereto as *Exhibit C*.

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]  *Id.*

Remittance Checks[19] demonstrate that Star One completely, decisively and intentionally breached the terms of the *Assurance of Discontinuance*.  This is direct evidence of the willfulness pursuant to 29 U.S.C. § 255 of the FLSA thereby subjecting Defendants to a <u>three</u> year statute of limitations and liquidated damages.

## CLASS AND COLLECTIVE ACTIONS ALLEGATIONS

42.    Claims for damages based on breach of contract, fraud, and promissory estoppel in the alternative, are brought by the Class Representative Plaintiffs on behalf of themselves and all of those similarly situated, namely, former and current employees of Defendants for the past five years prior to the filing of this cause of action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

43.     All claims for damages under the FLSA are brought by the Class Representative Plaintiffs as a Collective Action pursuant to 29 U.S.C. § 216(b).

44.    At all relevant times, Defendants employed Plaintiffs for the purposes of the FLSA, 29 U.S.C. § 203.

## FLSA COLLECTIVE ACTION ALLEGATIONS

45.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46.    All claims set forth in the FLSA Collective Action Allegations are brought against Defendants by the Class Representative Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to the collective action provisions of 29 U.S.C. § 216(b) of the FLSA.

47.    The Class Representative Plaintiffs seek to represent an FLSA Class consisting of all Filipino H-2B guestworkers employed by Defendants at any time from January 18, 2007, up to and

---

[19]  *See Exhibit A*.

through the present, and until the time of the trial of this matter.

48.     The proposed FLSA Class Members are similarly situated in that they have been subject to uniform practices by Defendants which violated the FLSA, including:

> a.     Defendants' systematic unlawful payroll deductions for housing, transportation, uniforms, cell phones, and food;
>
> b.     Defendants' workforce-wide failure to reimburse Class Members for travel, immigration processing, visa, recruitment, and other immigration-related expenses;
>
> c.     Defendants' workforce-wide failure to pay Class Members all of their wages when due at the wage rate that Defendants had initially agreed to pay them;
>
> d.     The weekly total for the wage deductions resulted in reduction of wages paid to Class Members below the minimum wage rate required by the FLSA, 29 U.S.C. § 203(m); and
>
> e.     The cost of illegal deductions were not included in calculation of overtime wages, pursuant to the requirements of the FLSA. 29 U.S.C. § 207 (e).  As a result, Class Members were not fully compensated for all of the hours of overtime they worked.

49.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     The named Plaintiffs assert this claim for damages and declaratory relief pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.

51.     Defendants violated 29 U.S.C. § 206 by failing to pay Plaintiffs and others similarly situated the applicable minimum wage for every compensable hour of labor they performed.

52.     Defendants violated 29 U.S.C. § 207 by failing to pay Plaintiffs and others similarly situated the applicable overtime wage for every compensable hour of labor they performed.

53.     The violations of the FLSA set out above resulted from Defendants' illegal

deductions from the wages of Plaintiffs and others similarly situated.

54.    Defendants' failure to pay Plaintiffs and others similarly situated their federally mandated minimum and overtime wages were willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

55.    As a consequence of Defendants' violations of the FLSA, Plaintiffs and others similarly situated are entitled to recover their unpaid minimum and/or contractual and overtime wages, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

56.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed and/or continue to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

57.    Plaintiffs in this action have signed Consent to Sue forms pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.  Other individuals will sign consent forms and join as Plaintiffs in this claim in the future.

58.    Defendants violated and continue to violate the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).  These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. § 201, *et seq*.

## Federal Rule of Civil Procedure 23 Class Allegations

59.    The Class claims for injunctive relief are brought pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).  For the purposes of injunctive relief, the Class consists of all Filipino H-2B

guestworkers who were recruited by Defendants from five years prior to the filing of this cause of action and who traveled/or were transported to the United States.

60.    The Class claims for actual, punitive and treble damages are brought pursuant to Fed. R. Civ. P. 23(a) and 23 (b)(3).   For the purposes of actual, punitive and treble damages, Class consists of all Filipino H-2B guestworkers who were recruited by Defendants from five years prior to the filing of this cause of action and who traveled/or were transported to the United States.

### *Rule 23(a)*

61.    The precise number of individuals in the Class specifically described above is known only to Defendants, but the Class is believed to consist of 100 to 200 individuals.   Because of the number of Class Members, and because said Class Members are foreign nationals and migrant workers, joinder of all Class Members is impracticable.

62.    Questions of law common to the Class include, but are not limited to:

  a.   Whether Defendants' conduct as set out above constitutes fraud and/or negligent misrepresentation for which they are legally liable;

  b.   How the terms of Plaintiffs' contracts with Defendants should be interpreted and whether Defendants breached contracts with Plaintiffs;

  c.   The nature and amount of damages available to Plaintiffs, including the applicability of treble, compensatory and/or punitive damages; and

  d.   Whether and what kinds of injunctive relief are appropriate.

63.    Questions of fact common to the Class include, but are not limited to:

  a.   Whether Defendants made promises and/or representations to Class Members that were fraudulent;

  b.   Whether such promises were made willfully or negligently;

  c.   Whether Class Members reasonably relied on Defendants'

fraudulent promises;

d.   Whether Defendants subjected Class Members to differential and/or adverse terms and conditions of employment on the basis of their race and/or alien status;

e.   Whether Defendants conspired with other parties for the purposes of depriving Class Members of their rights to be free of forced labor and involuntary servitude;

f.   Whether Defendants in fact failed to comply with the terms of their contracts with Class Members and, if so, which terms were breached; and

g.   The source and amount of Class Members' damages.

64.   The claims of the Class Representative Plaintiffs asserted in this *Complaint* are typical of the claims of the Class Members.

65.   The Class Representative Plaintiffs will fairly and adequately protect the interests of the Class Members.

66.   Plaintiffs' counsel are experienced in handling Class Action litigation on behalf of workers like Plaintiffs and the Class Members and are prepared to advance costs necessary to vigorously litigate this action pursuant to Fed. R. Civ. P. 23(b)(2).

67.   Defendants have acted and/or  refused to act on grounds generally applicable to the Class with respect to the claims set forth in this *Complaint*, thereby making final injunctive relief applicable to the Class appropriate under Fed. R. Civ. P. 23(b)(2), by, *inter alia*:

a.   Engaging in and refusing to desist from engaging in a common illegal scheme, plan and/or pattern of fraudulent recruitment and immigration processing activities which attempted to force and forces Plaintiffs and other Class Members to provide labor or services to Defendants and which injured Plaintiffs and other Class Members in their business and/or property;

b.   Upon information and belief, Defendants' continuing involvement in similar recruitment and labor practices.

15

68.     Upon information and belief, Defendants continue to conduct and engage in unlawful recruitment and labor practices, threatening current and future violations of Plaintiffs' and other Class Members' rights.

### *Rule 23(b)(3)*

69.     Common questions of law and fact relevant to this *Complaint*, as identified above, predominate over any pertinent questions involving only individual members.

70.     A Class Action is superior to other available methods of adjudicating the claims set forth in this *Complaint* because, *inter alia*:

      a.     Common issues of law and fact, as identified in part above, substantially diminish the interest of Class Members in individually controlling the prosecution of separate actions;

      b.     The Class Members are foreign nationals and migrant workers who are heavily in debt and lack the means and/or resources to secure individual legal assistance and who are particularly likely to be unaware of their rights to prosecute these claims;

      c.     No member of the Class has already commenced litigation to determine the questions presented; and

      d.     A Class Action can be managed with efficiency and without undue difficulty because Defendants have systematically and regularly committed the violations complained of herein and have used standardized recruitment, record-keeping, and employment practices.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C.§ 1962(c) and 18 U.S.C.§ 1962(d)

71.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs' and other Class Members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against all Defendants.

73.     Plaintiffs and other Class Members are "persons" with standing to sue within the

meaning of 18 U.S.C. § 1964(c).

74.    Each of the several defendants is a "RICO person" within the meaning of 18 U.S.C.

§1963(1).

75.    All Defendants named herein, Andrew Hague and the United States Consular officers

in the Phillippines constitute an association-in-fact, and therefore an enterprise (the "RICO

Enterprise"), within the meaning of 18 U.S.C. § 1964(4).   Judge Andrew Hague traveled to

Philippines for and on behalf of Separate Defendant Star One Staffing Inc.[20]  As Judge Hague stated

in his letter to US Ambassador to the Philippines:

> **For and in behalf of Star One Staffing** and J.E.S. International
> Manpower Corporation, I am respectfully requesting your kind assistance
> in scheduling for an early group interview of its Filipino Overseas Worker
> Applicants. . .
>
> I just arrived last night from the States specifically for this particular
> purpose.   **I need to assist STAR ONE STAFFING** based in Miami,
> Florida to facilitate the early group interview of their Filipino Worker
> applicants for placement and deployment to Miami, Florida.  Fortunately,
> I learned that you are recently assigned here in the Philippines and through
> some Filipino friends and business associates, I was informed that you still
> remember me.
>
> I graduated from the same University (Tulane University) in 1978, where
> you receieved your Master's Degree. . . I will probably need your kind
> assistance in this matter. . .[21]

The letter was sent from Judge Hague's personal email on October 13, 2006.[22]  On October 18,

2006, his wife Mary Jane Hague sent another letter to the United States Embassy in Philippines,

---

[20] The Letter from Judge Andrew Hague to Hon. Ambassador Kristie Kenney, on October
13, 2006, is attached hereto as Exhibit D.

[21] *Id.*

[22] *Id.*

requesting an interview with the Embassy.[23]  The fact of Judge Hague's personal involvement in the recruitment and visa process of Filipino workers clearly establish that there was an agreement between the Defendants, Andrew Hague, and the U.S. Consular officers in the Philippines.  The parties objectively manifested agreement to participate in placement and deployment of the Filipino Worker applicants.

76.     The RICO Enterprise is an ongoing business relationship between all of the named Defendants, Andrew Hague and the United States Consular officers in the Phillippines, with the common purpose of recruiting, transporting, providing, processing, and obtaining foreign workers to work in different country clubs and other food and beverage service industry establishments in different states, including Arkansas.

77.     The RICO Enterprise is engaged in interstate commerce, in that its activities and transactions relating to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

78.     The RICO Enterprise is an on-going business relationship with the common purpose of selling work opportunities to Filipino workers to convince such workers to pay high fees and to travel to the United States to work for companies including Star One and Star One International.

79.     The members of RICO Enterprise  function as a continuing unit with a structure for decision-making.

80.     Defendants conducted or participated in, and/or conspired to conduct or participate in the affairs of the RICO Enterprise through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), related by its common goal to recruit,

---

[23] *Id.*

obtain, transport, process, and provide workers through the use of fraudulent promises and exorbitant

fees.

81.     Specifically, Defendants conducted or participated in and/or conspired to conduct the

affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity

under 18 U.S.C. § 1961(1):

> a.   Immigration document fraud in violation of 18 U.S.C. § 1546 (relating to fraud and the misuse of visas, permits and other documents); *see also* 8 C.F.R. §214.2(h)(6)(B)(vi);

> b.   Interstate and foreign travel to further its unlawful scheme in violation of 18 U.S.C. § 1952;

> c.   Mail fraud to further its unlawful scheme in violation of 18 U.S.C. § 1341; and

> d.   Wire fraud to further its unlawful scheme in violation of 18 U.S.C. § 1343.

82.     The RICO Enterprise engages in recruiting for work in the United States by making

fraudulent promises and charging exorbitant fees for its recruitment and immigration services.

### *Immigration Document Fraud: 18 U.S.C. § 1546(a)*

83.     As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise

submitted false and fraudulent documents in support of H-2B visa applications to U.S. Citizenship

and Immigration Services and the U.S. Department of Labor ("USDOL").[24]  Employers seeking to

hire employees on H-2B visas must first submit an application for temporary labor certification,

known as an Application for Alien Employment Certification (referred to as "ETA 750"), to the

applicable state workforce agency and the USDOL for approval.[25]  In such applications, Defendants

---

[24]*See* 20 C.F.R. Part 655, governing the labor certification process with which employers must comply in order to obtain an H-2B visa;  8 C.F.R. § 214.(h)(1)(D); and 20 C.F.R. §§ 655.0 to 655.4.

[25]*Id.*

certified under penalty of perjury that "The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law."[26] These documents were filed electronically and/or submitted in a paper form to U.S. Citizenship and Immigration Services.[27] These documents also state specific dates of filing, and are signed by Mary Hague.[28]

84.    These willful, knowing and intentional acts constitute immigration document fraud in violation of 18 U.S.C. § 1546(a).

### Unlawful Acts In Support of Racketeering Enterprises Through Interstate and Foreign Travel: 18 U.S.C. § 1952.

85.    As set forth in the preceding paragraphs, Defendants in the RICO Enterprise regularly engaged in and/or conspired to engage in interstate and foreign travel with the intent of carrying on its unlawful activities.

87.    Defendants in the RICO Enterprise frequently engaged in interstate and/or foreign travel to effectuate the fraudulent schemes discussed hereinabove.

88.    These willful, knowing and intentional acts violated 18 U.S.C. § 1952.

### Pattern of Related Racketeering Acts

89.    Defendants have engaged in the racketeering activity described in this Claim repeatedly with respect to the 100 to 200 Filipino H-2B workers employed by Defendants and working in the State of Arkansas and other states.

90.    The racketeering activity committed by Defendants continues presently as the RICO remains engaged in activities to fraudulently recruit workers in the Phillippines and exploit them in

---

[26] See Form I-129, and the Notice of Action signed by Mary Hague, attached hereto as Exhibit E.

[27] *Id.*

[28] *Id.*

the United States.

91.    Defendants rely on the racketeering acts described in this *Complaint* to conduct their regular business activities.  Through these racketeering activities, Defendants have successfully sought to profit from the fraudulent recruitment of Plaintiffs and other Class Members, and to continue to recruit, obtain, provide and maintain a consistent and uncomplaining Filipino H-2B guest worker labor force at Defendants' operations.

92.    Defendants' acts are a direct and proximate cause of injuries to Plaintiffs and other Class Members, including, but not limited to, the payment of high fees, assumption of significant interest bearing debt, loss of real and personal property, lost work opportunities, lost or unpaid wages and additional legal fees.

93.    As set forth in the preceding paragraphs,  the racketeering acts have similar participants: all of the Defendants.  Defendants directed their racketeering activities at similar victims: Filipino workers who contacted Defendants in search of stable employment in the United States.

94.    Defendants' acts have similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiffs and other Class Members, and use of similar employment practices and policies with respect to Plaintiffs and other Class Members.

### Mail Fraud: 18 U.S.C. § 1341

95.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

96.    As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise used the United States Postal Service on numerous occasions to further this fraudulent scheme.

97.     These willful, knowing, and intentional acts constitute mail fraud in violation of 18 U.S.C. § 1341.

### Wire Fraud: U.S.C. § 1343

98.     As is set forth in the preceding paragraphs, Defendants in the RICO Enterprise made and/or conspired to make false promises regarding employment contracts and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

99.     As is set forth fully in the preceding paragraphs, Defendants in the RICO Enterprise used wire communications via telephone, fax, and/or email on numerous occasions to further this scheme.

100.    These willful, knowing, and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

### Injury

101.    As a direct and proximate result of Defendants' willful, knowing and intentional acts discussed in this section, Plaintiffs have suffered injuries to their property and/or business, including but not limited to: exorbitant fees paid by Plaintiffs for visas and other immigration and recruitment-related services; interest on debts assumed by Plaintiffs to pay such fees; losses of personal and real property incurred in reliance on Defendants' fraudulent acts; lost and unpaid wages; lost employment opportunities, and other pecuniary and/or losses to real or personal property.

102.    Plaintiffs are entitled to an award of damages in an amount to be determined at Trial, including, but not limited to, treble damages and attorneys' fees and all costs associated with this action.

## FRAUD AND NEGLIGENT MISREPRESENTATION

103.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs.

104.    As is set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives knowingly and/or negligently made materially false and untrue statements and representations to Plaintiffs and other Class Members regarding the nature and terms and conditions of applications and opportunities for immigration status and employment in the United States.

105.    As is set forth in the preceding paragraphs, Defendants knowingly or negligently failed to disclose material facts to Plaintiffs and other Class Members regarding the nature, terms and conditions of applications and opportunities for immigration status and employment in the United States.

106.    Defendants intended the false statements made by Defendants and/or its agents, employees and/or representatives would induce Plaintiffs and other Class Members to pay the large fees requested by Defendants.

107.    Defendants intended the false statements made by Defendants and/or its agents, employees and/or representatives would persuade Plaintiffs and other Class Members to leave their homes and jobs in the Phillippines and travel to the United States to work for Defendants.

108.    Plaintiffs and other Class Members reasonably relied on the representations of Defendants and/or its agents, employees and/or representatives and had no reason to believe that these representations were false.

109.    Plaintiffs and other Class Members were entitled to rely on Defendants' representations.

23

110.    As a direct and proximate result of Defendants' knowing, willing, intentional and/or negligent actions, Plaintiffs and other Class Members have been injured.

111.    In reasonable reliance on Defendants' false and/or negligent representations regarding employment opportunities, Plaintiffs and other Class Members paid large sums of money to Defendants.

112.    In reasonable reliance on Defendants' false and/or negligent representations regarding employment opportunities, Plaintiffs and other Class Members incurred substantial interest-bearing debts in order to pay recruitment, immigration-related, and travel fees charged by Defendants and its agents, employees and/or representatives.

113.    In reasonable reliance on Defendants' false and/or negligent representations regarding employment opportunities, Plaintiffs and other Class Members sold personal and real property and surrendered employment opportunities in the Phillippines.

114.    Plaintiffs and other Class Members are entitled to recover compensatory and punitive damages in an amount to be proven at Trial.

## BREACH OF CONTRACT

115.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116.    As is set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives, offered to obtain H-2B guest worker immigration status for Plaintiffs and other Class Members in the United States under certain terms and conditions, in exchange for Plaintiffs' and other Class Members' payment of fees to Defendants and its employees, agents and/or representatives.

117.    Plaintiffs and other Class Members accepted Defendants' offers and paid the

agreed-upon fees.

118.    Defendants failed to comply with its obligations under the contractually-binding agreements entered into with Plaintiffs and other Class Members.

119.    In reasonable reliance on these agreements, Plaintiffs and other Class Members paid large sums of money and undertook substantial debts, surrendered other employment opportunities and incurred other financial losses.

120.    As a direct result of Defendants' breach, Plaintiffs and other Class Members have suffered damages.

121.    Plaintiffs and other Class Members are entitled to recover compensatory damages in an amount to be proven at Trial.

122.    In the alternative, based upon the facts stated herein above, and in accordance with contractual law in the State of Arkansas, the principles of unjust enrichment and promissory estoppel mandate judgment in favor of Plaintiffs.  Defendants herein clearly made a promise or promises to Plaintiffs and Class Members related to employment opportunities in the United States.  Plaintiffs and other similarly situated reasonably relied on Defendants' promises and acted in reasonable reliance thereon to their detriment.  Plaintiffs' reliance and performance enured to the benefit of Defendants, and Defendants were enriched thereby.  The enrichments was unjust.  Enforcement of the promises is the only way injustice can be avoided.

## PRAYER FOR RELIEF

123.    Plaintiffs request the following relief:

a.    Certification of Plaintiffs' Class Allegations Claims for Relief in this action as a Class claims pursuant to Rules 23(b)(2) and (b)(3) of the *Federal Rules of Civil Procedure*;

b.    Designating the Class Representative Plaintiffs as Class

representatives pursuant to Rule 23 of the *Federal Rule of Civil Procedure*, and designating counsel for the Plaintiffs as counsel for the Class;

c.   Preliminarily certifying the claims set forth in the FLSA Collective Action Allegations as a Collective Action pursuant to 29 U.S.C. § 216(b);

d.   Declaratory judgment, declaring that Defendants have willfully and wrongfully violated their statutory obligations and deprived the Plaintiffs and others similarly situated of their rights, protections and entitlements under law as alleged in the Plaintiffs' *Complaint*;

e.   Injunctive relief;

f.   Compensatory damages;

g.   Punitive damages;

h.   Treble damages as authorized by RICO, 18 U.S.C. § 1964(c)

i.   Liquidated damages as authorized by the FLSA, 29 U.S.C. § 216;

j.   An award of prevailing party costs, including attorneys' fees; and

k.   Such other relief as the Court deems just and appropriate.

124.   Plaintiffs further request the Court to enter a permanent injunction, restraining and preventing Defendants from withholding the compensation that is due each of Plaintiffs and from further violating their rights under the law.

125.   Additionally, Plaintiffs ask that the Court order a complete and accurate accounting of all the compensation to which Plaintiffs are entitled as well as provide a complete listing of the names and addresses of all those employees who are similarly situated as described above, all at the expense of Defendants.

126.   Plaintiffs ask this Court to award them monetary damages in the form of back-pay compensation, liquidated damages equal to their unpaid compensation, plus interest.  This will be for

the named Plaintiffs and all others similarly situated.

_____127.    Plaintiffs further ask the Court to award them their attorneys' fees, and their costs and expenses and disbursements in pursuing this cause of action for the named Plaintiffs and all those similarly situated.

**DEMAND FOR JURY TRIAL**

128.    Plaintiffs demand a Trial by Jury upon all issues herein.

WHEREFORE, premises considered, all Plaintiffs, each individually and on behalf of others similarly situated, respectfully asks that the named Defendants  Star One Staffing International, Inc., Star One Staffing, Inc., Mary Jane Hague, John C. Carruthers and Ruth Carruthers be summoned to appear and answered herein; for Class Certification pursuant to Rule 23 of the *Federal Rules of Civil Procedure* and Collective Action Certification pursuant to 29 U.S.C. §216(b) of the Federal Labor Standards Act; for judgment in an amount to be proven at a Trial before a Jury; for all attorney's fees and all costs incurred herein; and for all other good and proper relief to which they may be entitled, whether or not specifically requested herein.

Respectfully Submitted,

**PLAINTIFFS MORENO ROCO, ERICZON MACARAYAN, FRANCISCO ABSIN, LEONOR LACSINA and ROGELIO RINGOR, EACH INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 400
Little Rock, AR 72211
Telephone:  (501) 221-0088
Facsimile: (866) 591-4661
Email: josh@sanfordlawfirm.com

Josh Sanford,

Ark. Bar No. 2001037

and

HOLLEMAN & ASSOCIATES, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile:  (501) 975-5043

By:     /s/John T. Holleman
            John T. Holleman, ABN 91056
            Ark. Bar No. 91056
            Jholleman@johnholleman.net

            Maryna O. Jackson
            Ark. Bar No. 2009111
            Maryna@johnholleman.net

            Stephanie Ann Linam
            Ark. Bar No. 2007-132
            stephanie@johnholleman.net

## CERTIFICATE OF SERVICE

I, John T. Holleman, do hereby certify that a true and correct copy of the foregoing document has been delivered via CM/ECF this the 29th day of March, 2010, to the following attorneys:

Vincent O. Chadick    vchadick@bassettlawfirm.com

By:     /s/John T. Holleman
            John T. Holleman, ABN 91056